CHARLES E. BRADISH *et al.*

*v.*

ALEXANDER YOCUM.

*Filed at Springfield October 31, 1889.*

1. APPEAL—*reviewing the facts.* In cases that come to this court through the Appellate Courts, the judgments of the Appellate Courts are, under the statute, final and conclusive as to all matters of fact in controversy; and when the trial is upon issues of fact, then, unless the record shows that some question of law is raised by exceptions, by instructions, by propositions submitted to the court, or otherwise, there is no question involved which this court is permitted to review.

2. SAME—*in ejectment—reviewing the facts, as well as the law.* In an action of ejectment, involving a freehold, brought directly from the trial court, this court is authorized to pass both upon the facts and the law, and it is immaterial whether the complaint is that the court below, in making its finding, came to a wrong conclusion upon the facts or the law, or both. The inquiry is, did the facts, as they appear in the record, and the law, authorize the finding and judgment below.

3. CONTRACT *in respect of real estate—the word "sold" not the equivalent of "conveyed."* The word "sold," when applied to real estate, can not, as a matter of law, be held always to be equivalent to the word "conveyed." While a sale of realty can not be complete and effectual to pass the title without a conveyance, yet the word "sold" and the word "sale" are frequently used with reference to a transaction wherein no deed has been executed. It will always depend upon the circumstances of the particular case whether or not the word "sold" or "sale" imports an actual conveyance.

4. CONVEYANCE—*as to the property conveyed—latent ambiguity explained by parol.* Where a latent ambiguity in the description of land in a deed is made manifest by other evidence, parol evidence is admissible for the purpose of making an identification of the land alienated by such deed. Parol evidence is always admissible to explain a latent ambiguity, and show what property was intended to be conveyed.

5. In cases of latent ambiguity, evidence is received, not for the purpose of incorporating into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and the duty of the court is to declare the meaning of what is written in the instrument, and not what was intended to be written.

6. A, the owner of 181 acres of land, by his written contract, dated December 17, 1880, sold the same to B on December 28, 1880. A, by the direction of B, conveyed 112 acres of the land to C, which included 60 acres afterwards in dispute, and on February 9, 1881, A conveyed the remaining 69 acres to B. On January 29, 1881, C conveyed the 112 acres to B, who, on June.12, 1881, conveyed 52 acres, being the south part of the 112 acres, to D. On November 2, 1883, B conveyed, by warranty deed, to A, "all those parcels of land at, etc., which were sold to B by said A and by J B, excepting and reserving" a part thereof, which was described by metes and bounds: *Held,* that owing to the latent ambiguity as to whether the word "sold" meant the land embraced in the contract, or that in the deed of A to B, dated February 9, 1881, parol evidence was properly admitted to show the land intended to be conveyed by the deed of November 2, 1883.

7. SAME—*burden of proof in case of a latent ambiguity.* In ejectment for a tract of land claimed to have been conveyed by the defendant to the plaintiff, where the deed is subject to a latent ambiguity, the burden of proof will rest on the plaintiff to show that such tract was a part of the land intended to be conveyed to him.

8. SAME—*construction of deeds and other written contracts.* In construing deeds and all other instruments of writing, the important matter is to ascertain the intention of the parties, and the meaning which they attached to the words used.

9. SAME —*construed as against grantor.* Where there is doubt as to the construction of a deed, it is to be interpreted most favorably for the grantee. But this rule does not authorize the changing of the deed by incorporating into it an intention which is not expressed therein.

10. SAME—*deed void for uncertainty.* Where the subject of a grant by deed, after resort to extrinsic evidence, still remains a matter of mere conjecture, the deed will be held void for uncertainty.

11. TRIAL BY THE COURT—*propositions of law.* On the trial of an action of ejectment before the court alone, the parties are not required to submit written propositions of law, although they may properly do so.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. ORENDORFF & PATTON, and Messrs. PALMER & PALMER, for the appellants.

Messrs. PATTON & HAMILTON, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was ejectment, in the Sangamon circuit court, wherein Alexander Yocum, appellee, recovered from appellants 60 acres of land. The case was tried before the court without a jury.

On and before the 17th day of December, 1880, Yocum was the owner of $181\frac{81}{100}$ acres of land at or near Mud Lake, in Sangamon county, all of which is included in a written agreement of that date, executed and delivered by him to Ella C. Bradish, one of the appellants. The material portions of said agreement are as follows:

"This agreement, made and entered into this 17th of December, 1880, witnesseth, that I have this day sold to Ella C. Bradish all that part of section 9 which lies west of the Sangamon river and south of the railroad; also, all that part of the N. E. $\frac{1}{4}$ of section 8 which lies south of the railroad, and fifty-six and fifty-six one-hundredths of the east part of the east half of the south-east quarter of section 8, all in township 16 north, range 4, west of the 3d P. M., for the sum of $17 per acre, and have received on account of said sale $50. I am to have surveyed all that part of said land which lies in the north-east quarter of said section 8 and north-west quarter of said section 9, and payment of balance to be made when survey has been made and deed executed. This sale is made subject to a lease to John M. Striffler," etc.

December 28, 1880, Yocum made a deed for 112 acres of said land, which included the 60 acres in controversy, to one James L. Huse, and February 9, 1881, he executed a deed of conveyance for the $69\frac{81}{100}$ acres of the land lying north of the quarter-section lines in said sections 8 and 9, to said Ella C. Bradish,—said 112 acres and said $69\frac{81}{100}$ acres being the whole of the land included in the written agreement. On January 29, 1881, Huse conveyed the 112 acres to Ella C. Bradish, and she, on the 12th of June, 1881, deeded 52 acres, being the south part of the 112 acres, to one Richardson.

The title of appellee to the 60 acres of land in question depends upon the inquiry whether or not it was conveyed to him by a deed made by Ella C. Bradish and Charles E. Bradish, dated November 2, 1883. Said deed, omitting date, signatures and seals, is as follows:

"The grantors, Ella C. Bradish, and Charles E. Bradish, her husband, of the county of Sangamon, and State of Illinois, for and in consideration of $2400 in hand paid, convey and warrant to Alexander Yocum, of the county of Sangamon, and State of Illinois, the following described real estate, to-wit: All those parcels of land at or near Mud Lake, Sangamon county, Illinois, which were sold to Ella C. Bradish by said Yocum and by James Black, excepting and reserving, however, part of the S. E. $\frac{1}{4}$ and part of the N. E. $\frac{1}{4}$ of section 8, township 16 north, range 4 W., 3d P. M., and bounded as follows, to-wit: Beginning at a cut stone near the east bank of Mud Lake, distant 12 chains and 80 links south, and 13 chains and 24 links west from the N. E. corner of said S. E. $\frac{1}{4}$, and from which stone an elm, 24 inches in diameter, bears north $44\frac{3}{4}$ degrees west $91\frac{3}{4}$ links, and a hickory, 16 inches in diameter, bears south $43\frac{1}{2}$ degrees, west $79\frac{1}{2}$ links, and running thence north $59\frac{1}{4}$ degrees, west 21 chains and 18 links to a cut stone, from which a walnut, 10 inches, is north $26\frac{1}{3}$ degrees, west 29 links, thence north 3 chains, $85\frac{1}{2}$ links to the south boundary line of the Illinois Central Railroad Company's right of way through said section; thence in a northeasterly direction, along the south boundary line of said right of way, 23 chains; thence south, across said Mud Lake, to a point 2 rods south of the south bank of said lake; thence in a south-westwardly direction, along parallel with and 2 rods distant from the south and east bank of said lake, to the place of beginning. It being also intended by this deed to convey a tract of land, 75 feet wide, south of and adjoining the last above described tract, beginning at said cut stone, near the east bank of Mud Lake, and running thence north $59\frac{1}{4}$ degrees west, across said

lake, to a point 2 rods west of the west bank of said lake,—reserving, however, to said Bradish, her heirs and assigns, a perpetual easement for a roadway over said 75 feet strip,—reserving, also, roadways to ice house, and public roadway. Yocum to have privilege of stock going to water along the lake. The covenants of warranty herein are not to apply as against any incumbrance upon that part of said land heretofore conveyed by said Yocum to said Bradish, which may have existed at the date of said conveyance. Said lands are situated in the county of Sangamon and State of Illinois."

The contention of appellants is, that the expression, "all those parcels of land at or near Mud Lake, Sangamon county, Illinois, which were sold to Ella C. Bradish by said Yocum," refers to the lands conveyed by the deed from Yocum to Ella C. Bradish, dated February 9, 1881; and the contention of appellee is, that said expression has reference to the lands described in the written agreement of December 17, 1880.

Appellants urge that the word "sold," when applied to real estate, legally and necessarily implies a conveyance, and that the word "sold," in the deed from them to appellee, is unavoidably equivalent to the word "conveyed."

Appellee insists that the matters of the construction of the deeds of November 2, 1883, and February 9, 1881, and the written agreement of December 17, 1880, are purely legal questions, and should have been presented to the trial court by the submission of written propositions to be held as law in the decision of the case, and that no such propositions having been submitted, appellants are now precluded from raising such question of construction in this court. For the maintenance of this position appellee relies on the following authorities: *Tibballs* v. *Libby,* 97 Ill. 552; *Mutual Aid Association* v. *Hall,* 118 id. 169; *Hobbs* v. *Ferguson's Estate,* 100 id. 232; *Farwell & Co.* v. *Shove,* 105 id. 61; *Barber* v. *Hawley,* 116 id. 91; *McIntyre* v. *Sholty,* 121 id. 660.

There is no doubt it would have been entirely competent for appellants to have submitted written propositions to the court, and to have excepted and assigned error upon its refusal to hold such propositions to be the law applicable to the case. It is to be noted, however, that all the cases cited by appellee are either appeals from or writs of error to the Appellate Courts. In cases that come to this court through the Appellate Courts, the judgments of the Appellate Courts are, under the statute, final and conclusive as to all matters of fact in controversy; and where the trial is upon issues of fact, then, unless the record shows that some question of law is raised by exceptions, by instructions, by propositions submitted to the court, or otherwise, it is manifest there is no question involved which this court is permitted to review. But our attention is called to no case of a direct appeal from the trial court to this court where such rule has been held to apply. In this action of ejectment, involving a freehold, brought here directly from the circuit court, this court is authorized to pass both upon the facts and the law; and it is immaterial whether the complaint is that the court below, in making its finding, came to a wrong conclusion upon the facts or the law, or both. The inquiry is, did the facts, as they appear in the record, and the law, authorize the finding and judgment below?

While holding that appellants can now raise the question they seek to, in respect to the meaning of the word "sold," found in the conveyance from them to appellee, yet we are not prepared to say, as matter of law, that the word "sold," when applied to real estate, is always equivalent to the word "conveyed." In construing deeds and all other instruments of writing, the important matter is to ascertain the intention of the parties, and the meaning which they attached to the words used. A sale of realty can not be complete and effectual to transfer legal title without a conveyance, yet very frequently both the word "sale" and the word "sold" are used with reference to a transaction wherein no deed has been executed, as in

many cases of judicial sales, sales by auctioneers and other agents, and sales made by the owners under executory contracts. It will always depend upon the circumstances of the particular case whether or not the words import an actual conveyance and transfer of legal title.

The question that arose, at the trial, upon the deed to appellee, was in regard to the description of the property conveyed by it. The deed conveyed to appellee "all those parcels of land at or near Mud Lake, Sangamon county, Illinois, which were sold to Ella C. Bradish by said Yocum." In order to identify the subject matter of the conveyance, it was necessary to show what lands had been so sold. Appellee introduced in evidence the written agreement of December 17, 1880, which stated, "I have this day sold to Ella C. Bradish," and then described lands which included the premises in controversy, and further stated, "this sale is made subject to a lease," etc.; and also offered in evidence the deeds of December 28, 1880, and February 9, 1881, which developed the fact that he had conveyed the 112 acres, which included the 60 acres in suit, to Huse, and had only conveyed the $69\frac{81}{100}$ acres to Ella C. Bradish. It was apparent there was a latent ambiguity, made manifest by the extrinsic evidence. We think the circuit court ruled properly in holding that parol evidence might be admitted for the purpose of making an identification of the lands alienated by the deed to appellee. Parol evidence is always admissible to explain a latent ambiguity, and show what property was intended to be conveyed by a deed. *Marshall* v. *Gridley,* 46 Ill. 247; *Bybee* v. *Hageman,* 66 id. 519; *Billings* v. *Kankakee Coal Co.* 67 id. 489; *Colcord* v. *Alexander,* id. 581; *Fisher* v. *Quackenbush,* 83 id. 310; *Sharp* v. *Thompson,* 100 id. 447.

The difficulty in the case is as to the sufficiency of the evidence to establish that the 60 acres in dispute was a portion of the lands conveyed. Appellee testified positively that his purchase included the 60 acres; that he made the deed to

Huse for the purpose of saving the expense of another conveyance, by the direction and at the request of Mr. Bradish, who, in the whole transaction, acted for his wife; that he refused to deed to Huse without the agreement of December 17, 1880, was surrendered to him; that this was done, and that the purchase money from Huse was paid to him, and that thereupon he gave to Mrs. Bradish a bond for a deed for the remaining $69\frac{81}{100}$ acres.

The claim made by appellee was corroborated by Mendenhall, who testified that he had a mortgage for $3000 on the land Bradish conveyed to Yocum, including the 60 acres, which mortgage also covered the 15 or 16 acres reserved in the deed, and on which the ice house stood; that Mr. Bradish told him he had sold all the land to Mr. Yocum, except that on which the ice house stood, and requested him to release all of it except the 15 or 16 acres, and that he did so, and received $2000 from Yocum. The force of this circumstance was weakened by the explanation made by Bradish, that he had a previous arrangement with Yocum, which fell through, for the sale of all the land except that on which the ice house stood, and that at that time he arranged with Mendenhall to release, for a certain sum, all the land except the ice house reservation, and that when he made the subsequent arrangement with Yocum, and deeded to him, he paid Mendenhall the sum agreed upon, and had all the land, except the reservation, released from the mortgage. This prior arrangement, however, was denied by Yocum.

Another circumstance which tended to show the 60-acre tract was included in the conveyance was, that a strip out of it, two rods wide, formed a part of the reservation made in the deed. It would seem unreasonable and useless, if, as claimed by appellants, the sixty acres were not conveyed, but remained vested in Ella C. Bradish, that a small strip of ground therein should have been included in the reservation to her. The remaining corroborative circumstance was the

improbability that Yocum would pay $27 per acre for land which some three years before he had sold at $17 per acre.

On the other hand, Charles E. Bradish testified, with positiveness, that the conveyance did not and was not intended to include the 60-acre tract. The circumstances which tended to corroborate him were of quite as much probative force as those which tended to corroborate Yocum. The words of the deed to Yocum, "convey and warrant," are words of warranty, and the words of limitation upon this warranty, found in the latter portion of the deed, are: "The covenants of warranty herein are not to apply as against any incumbrance upon that part of said land heretofore conveyed by said Yocum to said Bradish, which may have existed at the date of said conveyance." The deed speaking, in one place, of "the land sold by Yocum," and in another place, of "the land conveyed by Yocum," the probabilities are that the word "sold" was used as synonymous with "conveyed," and that the two references are to the same land. If the theory urged by appellee is the correct theory, then the whole of the land lying south of the reservation was conveyed to him by the description, "all those parcels of land * * * which were sold to Ella C. Bradish by said Yocum and by James Black;" and the words in a subsequent part of the instrument, "it being also intended by this deed to convey a tract of land 75 feet wide, south of and adjoining the last above described tract,"—*i. e.*, the reservation,—"beginning at said cut stone near the east bank of Mud Lake, and running thence north $59\frac{1}{4}$ degrees west across said lake to a point two rods west of the west bank of said lake," would be wholly inoperative, as they would be but a double conveyance, in the same instrument, of said strip of land. Moreover, the conversation and transaction testified to by Guyant, about the rails belonging to the partition fence between the 60-acre tract and the tract lying north of it, were inconsistent with the theory that both tracts were conveyed to Yocum.

But the strongest point against the claim of appellee is, that it is inconsistent with the theory upon which he relies for its support, and conflicts with the deed, and the written agreement upon which he bases it. The fact Mrs. Bradish, in 1881, had conveyed the south 52 acres to Richardson, is a circumstance which makes it improbable that she, in 1883, attempted to convey, and warranted, said 52 acres to Yocum. The theory of appellee is, that the expression, "all those parcels of land which were sold to Ella C. Bradish by Yocum," refers to the lands mentioned in the written agreement. The words of the deed are, "*all* those parcels of land;" therefore, if the deed refers to the written agreement, then, necessarily, it shows an intention to convey thereby *all* the lands "sold" by the agreement, and this would include not only the $69\frac{81}{100}$ acres and the 60 acres, but also the 52 acres theretofore deeded to Richardson. Why would there not be equally good ground for the claim the deed and warranty covered the Richardson land, and Mrs. Bradish was liable therefor on the covenants of warranty? Appellee, however, does not contend that it was intended by the deed to convey the 52-acre tract, but, both in his testimony and by his brief, his claim is, that the deed from the Bradishes was for the James Black land, "and for all the land which he (Yocum) had previously sold to her (Mrs. Bradish) by virtue of the agreement of December 17, 1880, that she had not otherwise conveyed."

In cases of latent ambiguity evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and the duty of the court is to declare the meaning of what is written in the instrument, and not of what was intended to be written. (1 Am. & Eng. Ency. of Law, p. 532, and authorities cited in note 1.) It must be presumed, that if the deed refers to the agreement, and if it was not the intention by it to convey *all* the lands sold by Yocum to Ella C. Bradish, then, that the real inten-

tion would have been expressed in the deed, either by words of exclusion, or otherwise. The deed is manifestly inconsistent with the claim made by appellee that it was intended thereby to transfer the lands described in the agreement that Mrs. Bradish had not previously conveyed. Where there is doubt as to the construction of a deed, it is to be interpreted most favorably for the grantee; but here the latter asks that the deed shall be changed from what it was when executed by the grantors, by incorporating into it an intention which is not expressed therein.

For the purpose of sustaining a grant, extrinsic evidence may always be used to identify and establish the objects of the calls in a deed; but when the subject of the grant, after resort to proof that is *dehors* the deed, still remains a matter of mere conjecture, the deed will be held void for uncertainty. Here the Black land and the tract of land that lies north of the land in controversy are definitely ascertainable, whether the deed be held to refer either to the written agreement or the conveyance of February 9, 1881, and there is no failure of the grant. It seems to us, however, that the conclusion of the circuit court, that the deed also called for the tract of land which was recovered in this suit, was based upon inconclusive circumstances, and that there were other circumstances in evidence tending to establish that said land was not conveyed, which, when read in the light of the deed itself, were of equal and even greater potency. The burden was upon appellee to show that said tract was a part of the lands deeded to him, and this he failed to do.

We think the finding and judgment of the circuit court were erroneous, and the judgment is reversed and the cause remanded for another trial.

*Judgment reversed.*