## The Dandyline Company, Appellee, v. Harry Linsk, trading as H. Linsk & Company, Appellant.

### Gen. No. 24,582.

1. SALES, § 19*—*when order not binding contract until buyer approved sample.* A written instrument consisting of an order for certain dresses stating the price, but describing the dresses by lot number with colors "to follow," *held* not a binding contract until the buyer had approved a sample made by the seller from a sample furnished by the buyer, especially as a letter sent by the buyer 3 days later advised as to the sending of the samples and confirmed the theory that the first instrument was a mere order which would change into a binding contract when the samples made by the seller were approved by the buyer.

2. SALES, § 376*—*when allowance of damages for breach of order as a whole is error.* Under a contract for the sale of four different lots of dresses, where the seller was to submit samples from a sample furnished by the buyer, for his approval, the seller was liable

*See *Illinois Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

for damages for failure to perform as to two lots of dresses, concerning which there was a complete contract, but there being no contract as to the other two lots, there could be no breach or liability for the failure to perform, and the allowance of damages for breach of the order as to all four different lots of dresses was error.

3. SALES, § 386*—*when appeal from judgment in action by buyer presents question of fact.* In an action for breach of a contract to manufacture and deliver a certain quantity of dresses, where the facts proved did not show the existence of a contract for the sale of the quantity of dresses as claimed by the plaintiff, the court on appeal was entitled to determine from the record the extent of the breach of contract, and the appeal did not present a mere question of law but one of fact.

THOMSON, P. J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. EDMUND K. JARECKI, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed. Opinion filed February 11, 1920.

WILKERSON, CASSELS & POTTER, for appellant.

ROSENTHAL, HAMILL & WORMSER, for appellee; CHARLES H. HAMILL and HARRY MARKHEIM, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

Claiming that the defendant had failed to manufacture and deliver a certain quantity of dresses pursuant to an alleged written contract, the plaintiff brought suit and obtained a judgment against the defendant in the sum of $2,970.

The plaintiff, a corporation, located in Chicago, was in the business of manufacturing and selling children's dresses. The defendant is a resident of Philadelphia engaged in the manufacture of children's and misses' dresses. Prior to the matters here involved the parties had had some mutual business dealings. On November 10, 1917, the defendant and one Lewis, a Chicago rep-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

resentative, met with Myres and Pincus, officers of the plaintiff company, at the place of business of the latter company in Chicago. As a result of their negotiations on that occasion there was drawn up and signed by both parties the following instrument:

"Bought of Harry Linsk & Co.          How Ship......
Town Philadelphia, Broad &            When Dec., Jan.
        Wallace Sts.                    & Feb.
State Pa.                             Salesman......

| Lot No. | Price | Quantity | Color | | |
|---|---|---|---|---|---|
| 649 | $13.00 | 100 doz. | Asst. | to | follow |
| 605/648 | 12.50 | 100 dz. | ,, | ,, | ,, |
| 642/636 | 9.50 | 100 dz. | ,, | ,, | ,, |
| 607/643 | 9.50 | 100 dz. | ,, | ,, | ,, |

2% 10 day 60 days dating
3% 10 days
                    (Signed) Magnus Myres V. P.
                             O. K. H. L."

The numbers 649, 605, 642 and 607 represented defendant's lots or styles of dresses. The intermediate figures, 648, 636 and 643, referred to similar styles with different colors.

The phrase "Asst. to follow" meant that the assortment of models and sizes would be detailed later by the plaintiff to the defendant. On November 13, 1917, the plaintiff wrote to the defendant in part as follows:

"Confirming order which we placed with you for 400 dozen dresses, wish to state that we are sending you by express samples of these dresses.

"You will note that No. 607 is made in plaid and also comes in plain color under No. 643.

"You will note that No. 642 comes in stripes but is also made in plain color under No. 636.

"You will note that No. 605 comes in a plain and stripe combination and also comes in plain and plaid combination under No. 648.

"No. 649 is only as per sample with assorted yellow stripes.

"As soon as these samples are received, will you kindly make up samples which you are to submit, together with swatch of the materials to be furnished, and we will then O. K. same and return to you, together with list showing sizes and colors desired? Inasmuch as we are in special rush for these dresses, we would ask you to kindly make special effort and rush samples to us at once."

On November 24, 1917, the defendant wrote the plaintiff in part as follows:

"We have today expressed to you style 649, 605 and 642, with swatches attached showing the different colors. Style 636 we did not duplicate as yet as we haven't the desirable cloth on hand. Upon receipt of these samples, please send us your sizes so that we can go ahead, while our piece goods stock is changing daily and we therefore cannot afford to wait too long."

On November 28, 1917, the plaintiff wrote the defendant setting forth in detail under each lot number the materials, colors, sizes and quantities of each size desired. On December 1, 1917, the plaintiff acknowledged receipt of certain samples from the defendant stating, among other things, that Nos. 605, 636 and 642 were satisfactory; also stating that they had sent word in regard to No. 649 and that No. 605 would be satisfactory if made with a 4-inch hem. That letter further stated that 636 and 642 were satisfactory with the exception of the hem which should be 4 inches instead of 3, and that the percale collar should be changed to a Repp collar. In that letter occurs the following language: "Inasmuch as these dresses are now satisfactory with the changes specified above, we trust you will put them in work at once and rush No. 605 to us by express as fast as it is ready." In that letter, as to No. 649, a criticism was made of the stripes asking that other stripes be submitted for plaintiff's consideration, and further that the hem was 3 inches instead of 4 and the skirt was 61 inches in width instead of 68. On December 3, 1917, the defendant wrote to

the plaintiff stating that they could not change the material of No. 605 but would make the change in the hem, also change 636 and 642 as to the 4-inch hem. That letter stated that the percale collar was put on because it appeared on the plaintiff's original sample and that they would change it to Repp. The following language is then used: "We will wait with these numbers until we receive the original corrected sample." As to 605 the letter states: "As per your request, we will immediately put style 605 in work." It was also stated in the same letter that as to 649 they could not give a different stripe from that which they had already submitted.

On December 5, 1917, the plaintiff wrote to the defendant: "We are in receipt of your valued favor of the 3rd and wish to state we wired you that it would be satisfactory to have you make No. 605 and 636 and 642 as per your letter and this we now beg to confirm. Make 605 in the Berwick stripe as per your sample. Make No. 636 and 642 with Repp collar and as per the corrected sample which we believe you have received by this time. * * * In reference to No. 649, we regret to state we cannot use same in the material as per your sample." On December 18, 1917, defendant wrote the plaintiff that they could not get the material promptly from the mills according to sample of lot 607 and that they would consider that order as canceled unless the plaintiff could wait for a late delivery.

On December 26, 1917, the plaintiff received the first shipment of 44 dozen dresses and wrote to the defendant that those that purported to belong to No. 605, that is 25 dozen, were unsatisfactory and asking what should be done with them, also stating that those that pertained to No. 642 the plaintiff will keep. That letter also asks when No. 607 would be shipped; it also states that sample of No. 649 "which you were going to make up and submit to us for O. K. has not as yet been received."

Between December 18 and December 26, 1917, Myres had a conversation with Linsk, the defendant company, in Philadelphia, and at that conversation Linsk said that Nos. 605 and 642 were being made up and would be shipped very soon, but as to Nos. 607 and 649, he was waiting for ginghams from the mills in order to make the dresses in suitable fabrics; that they walked through the factory and Myres pointed out some goods and asked Linsk to submit that in dresses of No. 649; that Linsk said he would and would send a sample of the dress made in that stripe.

On December 29, 1917, the defendant wrote to the plaintiff stating that the dresses sent according to No. 605 although made of piece goods of lighter shade, it was the only thing they could get from the mills; that, however, they would make another attempt to obtain a lighter shade for No. 605 and as soon as the dresses of No. 605 were returned he would credit the plaintiff; that as regards style No. 649, that he promised to make up and submit sample, he finds that they have a very small amount of it in stock and has written to the mill to ask how soon they may expect delivery.

On January 2, 1918, the plaintiff wrote the defendant stating that the dresses of style No. 605 were being returned and that it would wait for the sample of style No. 649; that it insists on the defendant submitting sample of style No. 607 at once; that it would like to know when the dresses made up as per sample of Nos. 605 and 642 and 636 will be delivered.

On January 5, 1918, the defendant wrote the plaintiff that as the mill advises him that it will be unable to send the piece goods he will be unable to deliver the merchandise Nos. 642 and 636. "You state that your order was taken in good faith. We agree with you, but the same was also taken subject to our getting the materials from the mills. Our orders were also placed in good faith, but can do nothing, in receiving no deliveries."

On January 9, 1918, the plaintiff wrote to the defendant that it was willing to allow the defendant to make substitutions where necessary providing they were of materials equally as good as the sample submitted to him. Myres testified that the samples were exhibited to Linsk before the order was signed. That the course of the market for gingham from November to January was upward; that no goods were delivered under No. 649; that the plaintiff turned back 25 dozen dresses of No. 605 on the ground that they were of inferior material and of poor quality; that the plaintiff accepted 19 dozen of No. 642; that no other goods were received.

On cross-examination Myres stated that the plaintiff submitted a sample of No. 649, and then the defendant submitted its copy of No. 649, but it was not considered satisfactory by the plaintiff; that the same was true of sample No. 605, but the plaintiff accepted that one; that they submitted sample No. 642 to the defendant and the defendant submitted its sample of No. 642, and that was accepted by the plaintiff; that no sample of No. 607 was submitted; that they received 19 dozen of style No. 642 and kept them. Myres stated further on cross-examination that on December 20 the defendant told him, when in Philadelphia, that material for style No. 607 could not be secured from the mills before May, and that he, Myres, then took that sample away. Linsk testified that he talked with Myres and told him it would be impossible to get the exact pattern but that he could get something near and Myres said that would be satisfactory and submitted samples; that the samples were forwarded to Philadelphia; that the plaintiff did not approve of the sample on No. 649 and no goods were shipped on it; that the plaintiff forwarded samples on lots 649, 605 and 642; that 25 dozen were shipped on 605 and the defendant made up the other 75 dozen and was ready and willing to ship the balance; that the plaintiff returned the 25 dozen and

the defendant gave him credit therefor; that as to style No. 642, the defendant submitted a sample which had been approved and 19 dozen were shipped; that they had no cloth for the balance; that in talking with Myres in Philadelphia about December 18, he told him that he would not be able to make up the balance of lot No. 642 because he did not have the cloth; that Myres said he still wished to have lot No. 649; that he told Myres that he had not approved sample No. 649; that he showed him the garment again and Myres said he could not use it; that Myres took samples and said he would try to buy it somewhere else; that he also took away samples of Nos. 642 and 607; that he showed him cloth in regard to No. 649 and that Myres said it could not be approved as there was not enough gold in it and the defendant told him he had no other cloth to give him. That he made up samples for them and submitted Nos. 605, 642 and 649 and they accepted Nos. 605 and 642 and rejected 649 because they said the pattern did not answer the garment; that the sample defendant submitted was better than that the plaintiff submitted; that about December 18 in a conversation with Myres he told Myres that they had about finished the 100 dozen of No. 605, and about the same of No. 642; that he told Myres the plaintiff had not passed the cloth for No. 649; that they said it was not yellow enough; that Myres said he could not use defendant's sample of lot No. 649; that Myres said that the defendant had not submitted a sample of No. 607; that the defendant told him he could not obtain the cloth; that Myres said he would have to take the samples back and try to get the merchandise elsewhere.

The cause was tried before the court without a jury, and a judgment entered in favor of the plaintiff and against the defendant in the sum of $2,970. From that judgment this appeal is taken.

It is the contention of the defendant that the evidence does not justify the judgment. It is the theory

of the defendant that the instrument of November 10, 1917, though signed by the plaintiff and "O. K.'d" by a representative of the defendant, did not in itself contain all the essential terms of a completed contract, but was some evidence, to be taken in conjunction with certain correspondence and conduct of the parties; and that, when so considered it failed to show a completed contract as regards certain lot numbers mentioned in the instrument of November 10, 1917. On the other hand, it is claimed by the plaintiff that the written instrument of November 10, 1917, together with the samples concurrently submitted, constituted a valid and binding contract for the sale and delivery of all four styles of dresses, that is, the full 400 dozen.

We are of the opinion that the instrument of November 10, 1917, taken in conjunction with the correspondence and the testimony, shows conclusively that it was the intention of the parties that there should be no binding contract concerning any one of the four styles of dresses until the plaintiff had approved a sample made by the defendant from a sample furnished by the plaintiff. And as to such a situation the law is well expressed in *Pennsylvania Lubricating Co. v. Wilhelm,* 255 Pa. St. 390. In that case the contract was evidenced by a letter from the defendant, the seller, to the plaintiff purporting to confirm a sale of two tank cars of grease "which, in accordance with agreement, is subject to approval of type sample drawn from bulk, which will be submitted immediately upon receipt from the plant involved." The defendant did not deliver any grease or submit any sample of it but subsequently notified the plaintiff that he would not perform. The court said: "The contract was lacking in one essential particular, the minds of the parties had not met on the quality of the commodity, as that was to be determined by sample thereafter to be submitted for plaintiff's approval. Until such approval there was no completed

agreement.'' And further, on the subject of liability and damages, that court said: ''If a contract be invalid because incomplete it is not made valid by the neglect or refusal of one party thereto to do that which would enable the other party at his option to render it complete. And if the contract be still invalid there is no basis for a recovery of damages because of defendant's neglect to furnish the sample in question.''

In the letter of November 13, 1917, written by the plaintiff about 3 days after the signing of the instrument of November 10, 1917, the plaintiff wrote: ''Confirming order which we placed with you for 400 dozen dresses, wish to state that we are sending you by express samples of these dresses. * * * As soon as these samples are received, will you kindly make up samples which you are to submit, together with swatch of the materials to be furnished, and we will then O. K. same and return to you, together with lists showing sizes and colors desired * * * rush samples to us at once.'' That letter alone, taken in conjunction with the instrument of November 10, 1917, practically demonstrates that on November 13, 1917, there was merely an order outstanding on the part of the plaintiff which could ripen into a mutually binding contract only when the samples to be made by the defendant had been made and sent to the plaintiff and approved. The correspondence and the testimony of Myres all tend to show that it was the understanding of both parties that neither should be bound until the plaintiff had approved samples made by the defendant.

The evidence shows that as to lot No. 605, the sample made by the defendant was approved by the plaintiff and that 25 dozen were shipped and that the remaining 75 dozen of that lot number the defendant made and had ready to ship, but as the plaintiff objected to the 25 dozen that were shipped, that they were unsatisfactory, the defendant wrote that he would take them back and give the plaintiff credit for them. Of course,

as the minds of the parties had both met as to lot No. 605, the defendant would be liable for whatever damages the plaintiff suffered by reason of the defendant's breach.

As to lot No. 642: The plaintiff on December 1, 1917, acknowledged receipt of the sample from the defendant and admitted it was satisfactory with the exception that the hem should be 4 inches instead of 3 and that the percale collar should be changed to a Repp. Further, the sample of that lot, made by the defendant, was approved by the plaintiff and subsequently 19 dozen were shipped. The balance of that order of 100 dozen was not shipped and Myres testified that the defendant told him in a conversation with him on December 18, 1917, that he would not be able to make up the balance because he did not have the cloth. Of course, as to that order, lot 642, there was a completed contract and inasmuch as the defendant failed to perform his part of it he became liable for whatever damages the plaintiff had suffered.

As to lot 649: The plaintiff wrote on Nov. 13, 1917, "We are in need of some Nos. 649 and 605 first, and would like to have you make up these samples first." On November 24, 1917, the defendant wrote: "We have today expressed to you style 649, 605 and 642, with swatches attached showing the different colors. * * * Upon receipt of these samples, please send us your sizes so that we can go ahead," etc. On November 28, 1917, the plaintiff wrote stating that the defendant's samples had not yet been received but in order not to have any delay "We are enclosing herewith our order and as soon as samples are received, we will wire you an O. K. on it." On December 1, 1917, the plaintiff wrote expressing its satisfaction as to the samples of 605, 636 and 642, but that the sample of 649 was unsatisfactory "that the stripe which you have substituted on this dress is not at all satisfactory, and we would like to have you submit other stripes to us

at once." Also, that it should have a 4-inch hem instead of a 3-inch, and the skirt should be 68 inches instead of 61. On December 3, 1917, the defendant wrote the plaintiff as to style 649, that he regretted he could not give a different stripe from that submitted: "We will not go ahead with these graments until we hear from you. If you do not want to lose any time, we would suggest you wire us immediately upon receipt of this letter." On December 5, 1917, the plaintiff wrote the defendant in reference to No. 649, "regret to state that we cannot use same in the material as per your sample." Myres testified that between December 18 and 26, 1917, he was in Philadelphia and saw the defendant, and while going through the defendant's factory they discussed a quantity of striped goods and that he asked the defendant if he would make that up, referring to a certain quantity of striped goods for lot No. 649, and that the defendant said all right, and that he would send a sample of the dress to the plaintiff. Myres testified further: "I went away from Philadelphia believing that the sample was going to be sent out to Chicago for our O.K." On December 26, 1917, the plaintiff wrote to the defendant: "Sample of No. 649 which you were going to make up and submit to us for O. K. has not as yet been received." On December 29, 1917, the defendant wrote the plaintiff that he found that they only had a small amount of the goods similar to that which he had promised to submit a sample of; that he had written to the mill to see how soon he could get more of that material. On January 2, 1918, the plaintiff wrote the defendant: "We note what you have to say in reference to style 649 and wish to state that we will wait a few days longer for a sample, inasmuch as we shall expect by that time you will have received an answer from the mill and will be in a position to give us this information." Obviously the minds of the parties never met

concerning lot No. 649; no sample submitted by the defendant to the plaintiff ever received the approval of the latter. Being no contract concerning lot No. 649, there was no breach of liability.

As to lot No. 607: On December 5, 1917, the plaintiff wrote the defendant: "We have not as yet received sample and swatch for No. 607. Kindly do your best to submit this sample to us at once so that we can confirm order on same." And on December 13, 1917, the plaintiff wrote: "How about 607 sample? Let us hear about this number by return mail." On December 18, 1917, the defendant wrote the plaintiff that he could not get the material from the mill for style No. 607 before May. "If you cannot wait for this late delivery, will consider same canceled upon receipt of your advice." On December 26, 1917, the plaintiff wrote the defendant: "In regard to dress No. 607 which Mr. Myres informs us you will not be able to deliver for some time, wish to state that it is of utmost importance to us that this dress also be shipped at once as we are holding our orders awaiting your dresses." No sample of No. 607 was ever furnished by the defendant, and when Myres saw the defendant in Philadelphia he took with him the original sample of 607, but after the defendant had stated that material for that style could not be secured from the mills before May, he took the sample away with him. Evidently the minds of the parties did not meet in regard to style No. 607; and no sample furnished by the defendant was ever approved by the plaintiff, the result being that, as to lot No. 607, there was no consummated contract and, therefore, there could be neither breach nor liability.

It is contended by counsel for the plaintiff that on this appeal only a question of law is involved. With that we are unable to agree. The facts proven do not show that the contract declared upon, that is to sell the plaintiff 400 dozen dresses, ever existed, and such

being the case, we are then both entitled and bound to determine from the record as it appears here whether the evidence which was actually admitted sufficiently tended to show a breach of a contract to sell the plaintiff a certain 200 dozen dresses and so justify the judgment which was actually rendered. Many witnesses were called to prove the damages claimed to have been suffered by the plaintiff but obviously the evidence on that subject was all put in on the theory of a breach of a contract to sell a certain 400 dozen dresses, and by no safe analysis can that evidence be said to show that the plaintiff was damaged to the extent of the judgment by reason of a breach of a contract as to 200 dozen dresses. The judgment was not justified by the evidence. The judgment is, therefore, reversed.

*Reversed.*

Mr. Presiding Justice Thomson dissenting: I am unable to concur in the foregoing decision. There is a direct conflict in our decisions in Illinois on the question of the necessity of having the trial court pass upon propositions of law in order to preserve issues of law for review in this court, in a case which has been tried by the court below without a jury. On the one hand we have the following cases holding that the Appellate Court in reviewing such a case may pass upon such issues of law as may be involved even though no propositions of law were submitted to the trial court: *West Chicago Park Com'rs v. Kincade,* 64 Ill. App. 113; *City of Chicago v. Bartels,* 146 Ill. App. 180; *United States Brewing Co. v. Wolf,* 181 Ill. App. 509; *Lanski v. Chicago & N. W. Ry. Co.,* 181 Ill. App. 565; *Consolidated Ribbon & Carbon Co. v. Crane Co.,* 183 Ill. App. 392, and *Educational Aid Society v. Bush Temple Conservatory,* 187 Ill. App. 250. The basis for these decisions is the opinion of our Supreme Court in *Bradish v. Yocum,* 130 Ill. 386, in which the court held in effect that in order to preserve issues of law,

for review in the Supreme Court in a case coming to
that court through the Appellate Court, it was neces-
sary that propositions of law be presented to and
passed upon by the trial court, but that this was not
necessary in cases coming to the Supreme Court direct
from the trial court.

On the other hand, we have the following cases hold-
ing that where the case is heard in the trial court
without a jury and the record shows no objections to
the rulings of the trial court upon the evidence and
no motions made during the progress of the trial call-
ing for rulings on the questions of law, and showing
further that no propositions of law were submitted to
the court, no issues of law are presented to this court
for review:  *Dominion Co. v. Atwood,* 114 Ill. App.
447; *Goodheart v. Hall,* 145 Ill. App. 604; *Bercaw v.
Sims,* 164 Ill. App. 241; *People v. Commissioners of
Highways,* 188 Ill. App. 56; *Flodin v. W. H. Lutes Co.,*
191 Ill. App. 195; *Overland Motor Co. v. Tennant,* 195
Ill. App. 6; *Warren Sales Co. v. Shaw,* 195 Ill. App. 211.
The only one of these cases that appears to have been
considered in any way in the Supreme Court is the
*Flodin* case. In that case the Supreme Court denied
a writ of certiorari.

Although there is no decision of the Supreme Court
following that of *Bradish v. Yocum, supra,* which may
be said to be directly on the point, there are subsequent
decisions of that court which seem to indicate clearly
that the Supreme Court has departed from the rule
laid down in that case. In the case of *West Chicago
Park Com'rs v. Metropolitan West Side El. R. Co.,*
182 Ill. 246, which was an appeal from the county
court of Cook county direct to the Supreme Court,
the appellant urged certain alleged errors of the trial
court on questions of law. No propositions of law had
been submitted to the trial court and the Supreme
Court held that in view of that fact none of the issues
of law which had been argued were before it for review

saying: ''The only question open for our consideration is whether the judgment is so manifestly against the weight of the evidence that we should hold that the court erred in its findings of fact.'' In the case of *Chicago Union Traction Co. v. City of Chicago,* 202 Ill. 576, being an appeal from the county court of Cook county direct to the Supreme Court, the court in effect followed the same rule, when it held that the trial court had been in error in refusing to pass upon propositions of law which had been submitted and said: ''The purpose to be subserved by propositions of law is to determine whether the trial judge entertains correct views of the principles of law involved in the proceeding. In some instances it is only through the medium of such propositions that the record can be made to show the views of the court as to the principles of law applicable to the facts of the case. In such instances the refusal to consider and pass upon the propositions would constitute fatal error.'' The court proceeded to hold in that case that the propositions of law which had been submitted to the trial court and which it had refused to pass upon did not call for any ruling upon any question of law except such as the court had already passed upon in its rulings as to the admissibility of the testimony, and therefore the court held that the refusal to pass upon the propositions of law submitted was harmless error and, the issues of law involved being preserved in the record by the rulings which the trial court had made, the Supreme Court proceeded to pass upon them. In *Sullivan v. Atchison, T. & S. F. Ry. Co.,* 262 Ill. 317, which was a writ of error to the circuit court of Will county, the bill of exceptions failed to show any exceptions to the judgment or any rulings of the court on the evidence, nor did it recite that any propositions had been submitted to the trial court or ruled upon by it, and again the Supreme Court held that no question of law was preserved for review.

Where the case comes to this court from the trial

court for review, this court may, generally speaking, pass upon the questions preserved in the record, both of law and of fact.  As to all questions of fact, the judgment of this court is final but as to all questions of law, the defeated party has the right to a further review in the Supreme Court provided the case is such as to come within the jurisdiction of that court, but in such cases the right of the defeated party to a review of the questions of law involved will come to naught if this court reviews the case and passes upon it, where the record discloses no propositions of law passed upon by the trial court, and the legal issues involved were not preserved by rulings upon the evidence or some appropriate motion.  If this court holds that it may review issues of law where they have not been preserved by propositions of law, or otherwise, the court might well be of the opinion that no error had been committed by the trial court on the facts, but it might base a reversal of the judgment on some questions of law, and although the case might be such as to come within the jurisdiction of the Supreme Court, the defeated party in the Appellate Court would be powerless to have its decision reviewed.

In the trial of a case with a jury, it is incumbent upon the trial judge to announce the principles of law which in its judgment apply to the issues involved, through its instructions to the jury and on appeal the issues of fact and the issues of law involving the substantive propositions on which the trial court based its conduct in the case are clearly preserved and defined for appropriate review.  The only method by which the same result can be obtained in cases where the jury has been waived, and the trial court passes upon the facts as well as the law, is by means of propositions of law.  It seems to me that both on the present state of the decisions of our courts and on reason it should be held that where issues of law are not preserved by appropriate motion or by rulings on the evidence and

no propositions of law have been presented to the trial court, nor passed upon by it, such issues of law cannot be considered on the record in this court.

That the record in the case at bar presents that situation seems to me to be clear. No issues of law were preserved by motion nor by rulings on the evidence and no propositions of law were submitted to the trial court. The very first issue urged by the appellant in this court at the beginning of the argument set forth in his brief is "the original order memorandum is not a contract because it is not complete as' to all its terms," and on the contrary the appellee argues (assuming but not admitting that the question is before this court for review) that the written memorandum dated November 10, 1917, together with the samples concurrently submitted and therein identified, constituted a valid and binding contract for the sale and delivery of the 400 dozen dresses therein referred to. Thus the first and main issue presented for our review is one of law involving the construction which should be placed upon the written document signed by the parties under date of November 10, 1917. That the question of the construction of the document referred to presents an issue of law, hardly seems to admit of doubt.

Nor can I agree with appellant's contention that, admitting this to present an issue of law, it is preserved for review by reason of the fact that the trial court allowed appellee's motion to strike out certain evidence of conversations following the date of that document. Such ruling was quite as consistent with a holding of the trial court that the document was a completed order, as with a holding that it was a completed contract.

Another issue urged upon this court by appellant is to the effect that the evidence is such as to show that he was excused from the performance of such contract as he admits was consummated, by reason of the

contract of the appellee, and it is further urged that the trial court erred in including certain elements of damages which should not have been considered. These matters likewise present issues of law.

No points other than these are argued by appellant in his brief and it is therefore my opinion that the judgment of the municipal court should be affirmed.