# Morton T. Culver, Appellee, v. Village of Glencoe, Appellant.

## Gen. No. 25,492.

1.  APPEAL AND ERROR, § 482*—*when submission of propositions of law is unnecessary.*  It is 'not the rule in the Appellate Court that failure to submit propositions of law in the trial court prevents the raising of such questions on review.

2.  APPEAL AND ERROR, § 1002*—*when sufficiency of evidence will be reviewed.*  Where, on appeal by defendant to the Appellate Court, no question is presented touching the admissibility of any evidence, that court will determine whether, on the whole record, evidence was submitted which authorized the finding and judgment in favor of plaintiff.

3.  MUNICIPAL CORPORATIONS, § 149*—*when evidence shows employment of attorney.*  In an action by an attorney against a village to recover for professional services rendered in connection with special assessment proceedings, pursuant to an agreement between such attorney and the village attorney, evidence *held* sufficient to sustain a finding that the agreement between plaintiff and the village attorney was made with the consent and approval of and was authorized and directed by the president and of a majority of the board of trustees of the village and that the successors of these officials knew the character and extent of the services rendered by plaintiff thereunder.

4.  MUNICIPAL CORPORATIONS, § 146*—*when special attorney may be employed.*  A municipal corporation has power to employ special counsel to assist its attorney in special assessment proceedings.

5.  MUNICIPAL CORPORATIONS, § 146*—*how special attorney may be employed.*  To render a municipal corporation liable for the services rendered by special counsel in assisting its attorney in special assessment proceedings, of which services it has received the benefit, it is not necessary that the agreement between such special counsel and the municipal officials under which the services were rendered be a matter of official record, where the evidence supports a finding that they authorized and directed the agreement.

6.  MUNICIPAL CORPORATIONS, § 149*—*when village is liable for employment of special attorney.*  Payment by a village to the village attorney for legal services in connection with special assessment proceedings does not relieve the village from liability to special counsel for services rendered in assisting in such proceedings

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
    Vol. CCXX 7

under an agreement between him and the former village attorney, which was authorized and directed by the president and a majority of the trustees of the village.

7. MUNICIPAL CORPORATIONS, § 149*—*when special attorney is not estopped from claiming fees.* One employed as special counsel to assist the village attorney in special assessment proceedings, the employment being authorized and directed by the president and a majority of the trustees of the village and providing that he shall receive one-half of the fee authorized to be paid the village attorney for doing the work, is not estopped, in action to recover for such services under the agreement, by the fact that, on interpleader proceedings to determine the right, as between plaintiff and the village attorney, to warrants issued by the village to the order of the village attorney for an amount equal to one-half of the authorized fee, plaintiff waived any claim to the sums for which the warrants were issued or to the warrants themselves, since such warrants were the property of the village attorney and did not represent any interest of plaintiff.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed November 29, 1920. Rehearing denied December 13, 1920.

GEORGE I. HICKS, for appellant; FRED D. JACKSON, of counsel.

ROBERT R. BALDWIN, for appellee.

MR. JUSTICE DEVER delivered the opinion of the court.

Plaintiff brought an action in the circuit court of Cook county and recovered therein a judgment against the defendant for the sum of $2,520.65, to reverse which the defendant brings the case to this court.

The case was tried in the circuit court without a jury, and the contention of plaintiff is that defendant, a municipal corporation, through its duly authorized agents, its president and board of trustees, had entered into a contract with the plaintiff, an attorney at law, under which plaintiff was retained to render professional services in connection with certain legal

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

proceedings taken for the making of a local improvement in the Village of Glencoe, which proceedings were known as Glencoe Special Assessment No. 209; that he, the plaintiff, had duly and faithfully performed the services required of him under the contract and that defendant had failed and refused to pay therefor.

The evidence introduced upon the trial, though somewhat contradictory, tends to prove that in October, 1912, the defendant's board of trustees passed a resolution which fixed compensation to be paid to the then village attorney for services in local improvement proceedings at 2 per cent of the cost of such improvements less 6 per cent thereof; that at the time the village improvement in question was originated, Mr. Olson was village attorney and that he stated to plaintiff, who had theretofore served the village as its president, and also many years as its attorney, that he wished to procure the aid of plaintiff in the legal work necessary in connection with the improvement; that after the adjournment of a public meeting of the trustees held for the purpose of giving public consideration to questions concerning the improvement, Mr. Olson requested of the village president and trustees that he be permitted to employ plaintiff to assist him in the proceedings, and he stated that if such request was granted, he, Mr. Olson, would agree to accept for his services one-half of the fee provided for by resolution for the doing of the work, and that the remainder should be paid to plaintiff; that the president and the trustees present acquiesced in the suggestion, and that he, Mr. Olson, was authorized to conclude the arrangement with plaintiff; that within a day or two thereafter Mr. Olson informed plaintiff of the authority given him and that plaintiff replied by saying that he would aid Mr. Olson in the work if the village would upon the entry of the confirmation judgment pay him a fee of 1 per cent of the amount of such judgment; that Mr. Olson reported the prop-

osition made by plaintiff to the president and the board of trustees and that they accepted it as made.

No record was made by defendant or by its board of trustees of the employment of plaintiff.

Mr. Olson's term as village attorney expired after a petition for confirmation of Special Assessment No. 209 was filed in the county court of Cook county and before the case was reached for trial. He continued, however, to act as attorney in the matter with Mr. Hicks, who succeeded him as village attorney. It was agreed between Mr. Olson and Mr. Hicks and the plain-tiff that the trial of the case was to be conducted by plaintiff, and the evidence tends to show that Mr. Olson informed the then village president of this fact. The plaintiff was assisted in the trial of the case by Mr. Hicks and to some extent by Mr. Olson. Members of the board of trustees were present during the trial, which occupied 20 days, and the plaintiff thereafter presented to defendant a bill for his services for the sum of $2,006.49, being 1 per cent of the confirmation judgment. At the time Mr. Olson was succeeded by Mr. Hicks as village attorney it was agreed between them that they divide equally any fees payable to the village attorney for services rendered in then pending local improvement cases. After the confirma-tion of the judgment two vouchers for attorney's fees were issued by defendant to Mr. Hicks, amounting in all to $1,921.99. The first of these vouchers was issued in May, 1914, and the second in January, 1917. The improvement for which the assessment was made was completed about December, 1916, at a total cost of $214,395.77.

Some time after the issuance of the last voucher to Mr. Hicks, the defendant filed a bill of interpleader in the circuit court of Cook county, in which it was alleged that defendant was indebted to Mr. Olson in the sum of $1,921.99 for services rendered by him in the making of the special assessment, but that plain-

tiff had participated in the case as attorney and that he claimed he was entitled to be paid for such services; that it, defendant, had only the sum of $3,843.98 available for the payment of attorney's fees for services rendered and that it has already paid one-half of this sum to Mr. Hicks; that it brought its warrants into court for the sum of $1,921.99 payable to the order of Mr. Olson, and it prayed that Olson and Culver be required to interplead in the case and that the court determine to whom the sum should be paid. In an answer filed to this bill, as also by cross-bill, plaintiff disclaimed any title to or ownership in the warrants made out in the name of Mr. Olson. Plaintiff asserted that he had been employed specially by defendant, through its proper officers, to render services in the special assessment proceedings. A decree was entered in favor of the plaintiff which on appeal to this court was reversed and the cause remanded to the trial court with instructions to dismiss the cross-bill which had been filed by plaintiff under which he sought a money decree against defendant for services alleged to have been rendered by him. The cause was remanded to the trial court with instructions to dismiss the cross-bill without prejudice to any legal right which plaintiff might have to bring a further action against defendant except as to the warrants and moneys represented thereby, which were directly involved in the interpleader action. It seems to be conceded that the plaintiff rendered services as alleged by him and that he has never been paid therefor.

It is asserted that no proposition of law having been submitted to the trial court, no question is presented for review by this court.

In the case of *Poague v. Cook,* 219 Ill. App. 647 (Abst.), this court said:

"With reference to the suggestion by plaintiffs' counsel that as no propositions of law were submitted to the trial court, such questions cannot be raised in

this court, it has been held that this is not the rule in the Appellate Courts. *City of Chicago v. Bartels,* 146 Ill. App. 180; *Lanski v. Chicago & N. W. Ry. Co.,* 181 Ill. App. 565; *Educational Aid Society v. Bush Temple Conservatory,* 187 Ill. App. 250; *Bradish v. Yocum,* 130 Ill. 386.''

No question is presented to us touching the admissibility of any evidence, and we are therefore to determine whether on the whole record evidence was submitted which authorized the finding and judgment in favor of plaintiff. The evidence shows that plaintiff because of his experience in special assessment matters was retained to render professional services in connection with Special Assessment No. 209. It is true that the negotiations with the plaintiff were carried on in the main by Mr. Olson, the then village attorney, but the evidence introduced by plaintiff tends to prove that Mr. Olson's actions were done with the consent and approval of the president and a majority of defendant's board of trustees, and there can be no doubt entertained from the evidence that the successors of these officials were well aware of the important and necessary services rendered by plaintiff in the special assessment proceedings. This is shown in part by correspondence between Mr. Mills, who succeeded Mr. Sayles as village president, and Mr. Olson.

The case, as we view it, really turns upon the question of whether the failure on the part of the village officials to make an official record of the employment of plaintiff is sufficient to discharge defendant from any liability for services rendered by the plaintiff and of which defendant received the full benefit. The evidence shows that the village trustees and the president did more than merely consent to the employment of plaintiff. While there is some dispute in the evidence, we think that there was sufficient shown to authorize a finding that the employment of plaintiff was authorized and directed by defendant.

In the case of *Hope v. City of Alton,* 214 Ill. 102, it was held that an attorney dealing with a city is chargeable with notice of and is bound by an ordinance which provides that the city should not in any case be liable for services of any attorney except a corporation counsel. Our attention has not been directed to any ordinance of defendant which prohibited the making of the alleged contract sued on.

The case of *City of Alton v. Mulledy,* 21 Ill. 76, seems to have turned upon a question of fact as to whether the defendant had by any act or conduct rendered itself liable to the plaintiff, who was a subcontractor of a contractor with whom the City of Alton had contracted to perform certain public work.

In the case of *Village of Harvey v. Wilson,* 78 Ill. App. 544, it was held that a village is liable to an attorney for professional services rendered by him even though no formal contract of employment, or any ordinance or resolution adopted by the council, directly authorized or ratified the action of its vice president in entering into the contract. This case in essential particulars is much like the present case. In the *Wilson* case it appears that after attorneys had performed valuable services for the village and had presented their bill therefor they were met by the statement that in that no public record had been made of their employment, the board of trustees would refuse to pay the bill. In deciding the case the court said:

"There is no doubt but that the board of trustees had the power to employ counsel to defend the village in a proceeding which went to its very existence as a corporation. In fact, this is practically conceded by appellant. Hurd's Rev. Stat. ch. 24, art. 11, secs. 8 and 11 [J. & A. ¶¶ 1525, 1528] ; *Dutton v. City of Aurora,* 114 Ill. 138; *City of Roodhouse v. Jennings,* 29 Ill. App. 50, and cases cited."

It appears in the present case that the proceedings in which services of value were rendered by the plaintiff, while not vital to the existence of defendant, were

of grave importance to the welfare of its inhabitants.

In its opinion in the *Wilson* case, *supra,* the court said:

"The village has had the benefit of these services, knew all about appellees' employment and the extent and nature of their services while they were being rendered, and notwithstanding, a new board of trustees say to appellees: 'True, you rendered these services, they are worth what you claim, we have had the benefit of them in the vindication of the very existence of the Village of Harvey in the adjudication of the court of the highest resort in the State, but we had a village attorney who should have done this work; we have no record that you were ever employed, or that we authorized or ratified your employment; we have made no appropriation to pay you, and we will not pay.'

"Such a position is most unconscionable and should not receive the sanction of any court, unless to do so is to obey some positive behest of the law, which fortunately, for the maintenance of fair dealing and good morals, is not the case. In *Town of New Athens v. Thomas,* 82 Ill. 259, which was a suit by appellees to recover the value of their services rendered to appellant, the sole defense being that appellees had not been employed by the town in its corporate capacity, the Supreme Court, after stating the general rule, as contended for by appellant, said: 'Indeed, every step taken by appellees in the adjustment of the matter in controversy was with the full knowledge, approbation and consent of the president and common council of the town. Can the town now be heard to say, after it has received the benefit of appellees' skill and labor in its behalf, and after it has recognized the employment by various corporate acts, that appellees were not employed? To so hold would neither be just nor in harmony with the current of authority on this subject.' "

*Town of Bruce v. Dickey,* 116 Ill. 527; *Town of New Athens v. Thomas,* 82 Ill. 259.

The defendant had the power to employ special

counsel to assist the village attorney in the special assessment proceedings, and it necessarily follows from what has been said that it ought to pay for the services rendered by plaintiff. The evidence shows that the resolution of October, 1912, provided for payment to the village attorney for services to be rendered under the special assessment proceedings a sum equal to 2 per cent of the cost of a proposed improvement. Mr. Olson, the then village attorney, the evidence shows, by an understanding with the village officials, waived the payment to him of one-half of this 2 per cent, and if the evidence admitted for plaintiff is to be believed, the sum so waived was, under the terms of the agreement, to be paid to plaintiff. After the making of the improvement, warrants were issued by defendant, payable to Mr. Olson, for one-half of the 2 per cent which the village became liable to pay under the resolution of October, 1912. In the interpleader proceedings the plaintiff waived any claim or right to the sums for which these warrants were issued or to the warrants themselves. The plaintiff's theory in the interpleader suit was the same as it is here, namely, that he was entitled to receive from the defendant not the sum for which the warrants were issued, but a similar amount which the defendant had agreed to pay him.

Whether Mr. Hicks, the village attorney, who succeeded Mr. Olson, received the amount due the plaintiff for services rendered need not be determined in the present case. As we have stated, we think there is some evidence which tends to show that a binding contract was entered into between the plaintiff and defendant by its proper officials; that this contract was made on behalf of defendant by its president and at least a majority of the board of trustees, and that these agents, as well as those who succeeded them in office, were well informed of plaintiff's connection with the special assessment proceedings. The fact of pay-

ment to Mr. Hicks does not in and of itself discharge defendant from liability to plaintiff.

The plaintiff is not estopped from asserting his rights under the contract.

In the interpleader proceedings referred to plaintiff filed an answer and a cross-bill, in which he disclaimed all interest in the warrants, or the moneys represented thereby, which were concededly the subject-matter of the interpleader bill. In our opinion in that case we said:

"Whether the complainant has by its conduct or the conduct of its officials become liable to the defendant Culver for the payment of any sum or sums of money may become an issue in other proceedings, and it is not intended to express any opinion here on this question further than to repeat that it is conceded that services of value have been rendered by Culver to the village for which he has not up to this time been paid.
*    *    *    *    *    *    *

"Whether complainant is or is not otherwise indebted to either defendant is not material under the issues presented by the bill. * * *

"The decree of June 27, 1916, will be reversed and the cause remanded with directions to dismiss the cross-bill of the defendant Culver without prejudice to any legal right which he may have to bring further action against the complainant, except as to the warrants and the moneys represented thereby involved in this cause." 204 Ill. App. 453.

Both the evidence in the record in the present case and the pleadings in the interpleader proceedings show that the warrants and the moneys represented thereby in the interpleader case were the property of Olson. Plaintiff never had and he never claimed any right to these warrants and his disclaimer of any interest therein ought not to be held to bar him from a right to bring his present action.

The decree of the circuit court will be affirmed.

*Affirmed.*

HOLDOM, P. J., and McSURELY, J., concur.