(No. 12099.—Judgment affirmed.)

E. M. BABBITT *et al.* Defendants in Error, *vs.* THE GRAND TRUNK WESTERN RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 21, 1918—Rehearing denied Dec. 5, 1918.*

1. APPEALS AND ERRORS—*when question presented to Supreme Court is one of law.* Where a suit at law is tried without a jury, no question is raised as to the evidence, no propositions of law are presented and no evidence is introduced by the defendant but the defendant moves at the close of the plaintiff's evidence to find the issues in favor of the defendant, the overruling of such motion presents a question of law whether the plaintiff was entitled to recover on the facts proven, and this question is open for review in the Supreme Court though the Appellate Court affirms the judgment of the trial court.

2. CARRIERS—*liability of carrier under Carmack amendment to Hepburn act.* Under the Carmack amendment to section 20 of the Hepburn act the liability of a common carrier for loss, damage or injury to a shipment is a liability to the lawful holder of the bill of lading, and hence the provision of an "order bill of lading" requiring the surrender of the bill, properly indorsed, before delivery of the shipment, is not one which is inserted for the benefit of the carrier, only, or one which it may waive without incurring liability to such lawful holder.

3. SAME—*when consignor is the lawful holder of bill of lading.* Where the consignor to whom an "order bill of lading" is issued deposits the same with his bank, which forwards the bill, with sight draft attached, to another bank for payment by the consignee, if the sight draft is not honored and the bill of lading is returned the consignor is the lawful holder of the bill, having been in continuous possession thereof through his agents, and the carrier is liable to him for delivering the shipment on the written order of the consignee but without the surrender of the bill of lading.

4. SAME—*provision of bill of lading as to notice of claim for loss construed.* The provision of an "order bill of lading" for a non-perishable shipment that "claim for loss must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property or within four months after a reasonable time for delivery has elapsed," is descriptive of the carrier to whom notice is to be given rather than of the place at which such notice is to be filed, and notice given to the claim agent of the carrier is sufficient, though his office is neither at the point of origin or point of delivery.

5. SAME—*liability for misdelivery is same as for non-delivery.*
Where an inter-State shipment of a car-load of beans, shipped on
an "order bill of lading" issued to the consignor, is delivered by the
carrier on the written order of the consignee but without requiring
the surrender of the bill of lading, with the result that the proceeds
of the shipment are lost to the consignor, the liability of the carrier
for the misdelivery is the same as for a non-delivery.

WRIT OF ERROR to the First Branch Appellate Court
for the First District;—heard in that court on appeal from
the Municipal Court of Chicago; the Hon. JOHN R. NEW-
COMER, Judge, presiding.

KRETZINGER, KRETZINGER & SMITH, (L. L. SMITH, of
counsel,) for plaintiff in error.

STEWART REED BROWN, for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an action on a breach of contract for loss of
goods in an inter-State commerce transaction. Defendants
in error sold a car-load of beans to the A. J. Thompson
Company, of Kansas City, Missouri, for a specified price of
$1683.15, to be paid for on arrival of the shipment at Ev-
ansville, Indiana. Plaintiff in error issued a bill of lading
"to order of A. J. Thompson & Co., destination Evansville,
Ind., notify Ragon Bros." The beans were on May 3, 1912,
loaded and shipped from Millett, Michigan, and arrived at
destination May 6, 1912. This bill of lading, with sight
draft attached, was deposited by defendants in error with
the Exchange Bank of Haslett, Michigan, and by it for-
warded to Kansas City and presented to the A. J. Thomp-
son Company for collection. The draft was not honored
and for that reason returned to the defendants in error
unpaid. When the beans arrived at destination they were
by the Chicago and Eastern Illinois Railroad Company,
the delivering carrier, upon the written order of the A. J.
Thompson Company, delivered to Ragon Bros. without the

surrender of the bill of lading.  Ragon Bros. paid the
A. J. Thompson Company for the beans.  This action was
brought in the municipal court of Chicago against the Grand
Trunk Railway System and the receivers of the Chicago
and Eastern Illinois Railroad Company for the wrongful
delivery of the beans.  Upon leave of court the name of the
defendant the Grand Trunk Railway System was changed
to the Grand Trunk Western Railway Company and the
cause of action dismissed as to the receivers of the Chicago
and Eastern Illinois Railroad Company.  The affidavit of
merits was amended so as to apply to the Grand Trunk
Company, alone.  Thereupon the case was tried by the court
without a jury.  The original bill of lading was introduced
in evidence by the plaintiffs and due proof made of the
value of the beans and their delivery to Ragon Bros. with-
out the bill of lading, upon the specific order, in writing,
from the A. J. Thompson Company, and also that plaintiffs
had not been paid for the beans.  The defendant introduced
no evidence at the trial.  At the close of all of the evi-
dence for the plaintiffs the defendant moved the court to
make a finding and enter judgment in its favor, which mo-
tion was by the court denied, and exceptions were preserved.
No other motion or proposition of law was submitted to
the trial court by either party.  The court found for the
plaintiffs and against the defendant in the sum of $1683.15,
overruled a motion for new trial and entered judgment on
this finding.  From that judgment plaintiff in error ap-
pealed to the Appellate Court for the First District.  The
Appellate Court held that under the pleadings there was but
one question raised on appeal, and that is whether plaintiffs
made a *prima facie* case on the issues of fact raised by the
pleadings.  That court found that a *prima facie* case had
been made and affirmed the judgment of the municipal
court.  The case comes to this court on writ of *certiorari*.

The first question presented by the record is that of
jurisdiction of this court.  On the trial in the municipal

court no question was raised as to the admission or exclusion of evidence and no written propositions of law were submitted to the court to be held as law. The defendants in error contend that the question attempted to be raised here,—*i.e.,* that under the evidence the plaintiffs were not entitled to recover,—is a question of fact, upon which, under the statute, the judgment of the Appellate Court is final. This court has frequently held that when no question of law is presented for our consideration the judgment of the Appellate Court will have to be affirmed. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Ottawa,* 165 Ill. 207, and cases therein cited.) While on the trial the plaintiff in error offered no evidence nor propositions of law, it did at the close of the plaintiffs' case enter a motion that the court find the issues for the defendant. The question now presented here by such motion is whether or not it preserves a question of law that may be reviewed here. This court has held that it cannot review the evidence for the purpose of determining whether it sustains the findings of the Appellate Court, but when the question is properly raised and preserved in the trial court whether there is evidence tending to prove plaintiff's cause of action, the ruling may be examined by this court as presenting a question of law. (*Rigdon* v. *More,* 226 Ill. 382.) Whether the evidence proves the issues may be a question of law. (*Cothran* v. *Ellis,* 125 Ill. 496.) When there is no controversy as to the facts, whether these facts sustain the plaintiff's cause of action or the defendant's defense is a question of law. (*Launtz* v. *People,* 113 Ill. 137.) "Whether or not the record contains any evidence tending to establish a fact is a question of law, and which we must decide." (*Commercial Union Assurance Co.* v. *Scammon,* 126 Ill. 355.) Where there is no controversy as to the facts and the only question is what judgment shall be entered on the facts in the record, such question is one of law and may be raised and preserved for review here in one of three ways: by de-

murrer to the evidence, by propositions to be held as law, or by a motion to find for the party. (*Conway* v. *Garden City Paving Co.* 190 Ill. 89; *Smith* v. *Billings,* 169 id. 294.) Had the plaintiff in error presented no motion, proposition or demurrer to the evidence but contented itself with an appeal from the judgment of the trial court the questions preserved in the record would have been of fact, merely, of which this court could have taken no jurisdiction; but a motion to find for the defendant having been entered and denied in the trial court, a question of law has been properly presented and preserved for review here.

Plaintiff in error contends, first, that upon delivery of the beans to the plaintiff in error for shipment under this bill of lading the title to the property passed from the defendants in error, the consignor, to and became vested in the consignee, and the carrier had a legal right to deliver the same on the consignee's order without demanding the bill of lading; second, that the provision of the bill of lading, "the surrender of this original bill of lading, properly indorsed, shall be required before the delivery of the property," is for the benefit of the carrier, only, and as between the carrier and consignor the carrier is not subject to liability for failure to require the production of the bill of lading before making delivery of the goods; and third, that the evidence does not show that the defendants in error complied with the provisions of the bill of lading requiring notice of claim to be filed within four months, as set forth in paragraph 3 of section 3 of the bill of lading.

Plaintiff in error in support of its first contention cites Hutchinson on Carriers, sec. 181, *Halliday* v. *Hamilton,* 11 Wall. 560, and *United States* v. *Andrews & Co.* 207 U. S. 227. There is no doubt but that prior to the act of Congress of June 29, 1906, known as the Carmack amendment to section 20 of the Hepburn act, (34 U. S. Stat. at Large, chap. 3591,) the rule in such cases was, "that as a general rule the delivery of goods by a consignor to a com-

mon carrier for account of a consignee has effect as delivery to such consignee." (*United States* v. *Andrews & Co. supra.*) The Carmack amendment provides "that any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or any common carrier, railroad or transportation company to which such property may be delivered or over whose lines or line such property may pass," etc. Prior to the passage of this amendment the law relating to the carrier's liability in inter-State shipments of property was enforced according to the view of the forum where the case arose. The Federal courts based their rules on the general common law, while a majority of the State courts determined the rights of the parties either according to public policy or the statutes of the State where the case was tried. Some States allowed carriers to exempt themselves from common law liability, in whole or in part, by contract or regulation. Federal courts sitting in the various States followed the rule of the State in which they were sitting, with the result that liability was found by the Federal court sitting in one State, while on the same state of facts such court sitting in another State found the carrier exempt. Neither uniformity of obligation nor of liability was possible. This diversity of legislative and judicial attitude toward the subject rendered uncertain, and, in fact, well nigh impossible, the business of a shipper beyond the boundary of his own State, while the carrier was put to much investigation, and oft times uncertainty, concerning its rights and liabilities in shipments from one State to another. The act of Congress referred to as the Carmack amendment put an end to this confusion, brought within its provisions every inter-State shipment of whatever character and fixed the parties and their rights and liabilities under such shipments. In *Adams*

*Express Co.* v. *Croninger,* 226 U. S. 491, Mr. Justice Lurton delivering the opinion of the court said concerning this act of Congress: "The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect on State regulation, it is evident that Congress intended to adopt a uniform rule and to relieve such contracts from the divers regulations to which they had been theretofore subject." This is likewise the holding of this court. (*Gamble-Robinson Commission Co.* v. *Union Pacific Railroad Co.* 262 Ill. 400.) Touching the parties and their liabilities Justice Lurton continues: "What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue, 'for any loss, damage or injury to such property caused by it or any connecting carrier to whom the goods are delivered.'" *Missouri, Kansas and Texas Railway Co.* v. *Harriman Bros.* 227 U. S. 657; *St. Louis, Iron Mountain and Southern Railway Co.* v. *Starbird,* 243 id. 592.

It will be seen, therefore, that the rights of the defendants in error under the above act will depend, in part, upon whether or not they are the lawful holders of the bill of lading in question. This bill of lading was issued to the defendants in error and by them deposited for collection with the Exchange Bank of Haslett, Michigan, which, acting as agent of the defendants in error, presented the same, with the sight draft attached, to the A. J. Thompson Company, the consignee, for collection. The draft was not honored and the bill of lading was returned to the Exchange Bank. It was at no time out of the possession or control of the defendants in error or someone representing them. Under the familiar rule of law that possession of the agent is possession of the principal, it follows that the defendants in error were the holders of said bill of lading. While the bill of lading was made out to the order of the A. J. Thompson Company it was issued to the defendants in error, and

the A. J. Thompson Company could only acquire the right to possession of it by paying the draft attached. This was not done. It will therefore be seen that defendants in error were not only the holders of said bill of lading but were the lawful holders thereof, and as such are entitled to make claim for loss if there be any. Plaintiff in error's first contention therefore fails.

Plaintiff in error's second contention is that the stipulation requiring surrender of the bill of lading before delivery of the property is for the benefit of the carrier, only. The bill of lading in this case is what is known as an "order bill of lading." This form of bill of lading was adopted, generally, on the recommendation of the Inter-State Commerce Commission. That commission is charged with the duty to regulate and make uniform rules governing inter-State commerce. The "order" bill of lading possesses a certain degree of negotiability, while the "straight" bill of lading is non-negotiable and is so stamped on its face. It is a matter of common knowledge that the "order" bills of lading are used as pledges to secure advances of money. It was evidently within the intention of Congress, in passing the Carmack amendment, to give protection to the lawful holder of a bill of lading, regardless of how he became such lawful holder. To hold this provision of a bill of lading to be for the benefit of the carrier, only, would be to render the Carmack amendment nugatory in those cases where the property was lost to such holder by delivering it without the surrender of the bill of lading. There appears to be no difference in principle between a case where, as here, the consignor holds the bill of lading, and one where the consignee has hypothecated it to a bank as security for a loan. If the carrier may be excused for delivery without the bill of lading in the former case he may be in the latter, and in both cases the Carmack amendment, which provides for protection for the holder of the bill of lading, is rendered of no avail.

It is urged that as there was no damage to the shipment here, and as it was consigned to the order of the consignee and delivered in accordance with its order, there was no loss for which plaintiff in error should be held liable. This contention is based on the assumption that the consignee had power to release the carrier by ordering the delivery without the bill of lading. However correct that assumption may have been prior to the passage of the Carmack amendment, it is evident that by that act Congress intended that the lawful holder of the bill of lading should be protected, and that when the carrier delivers property in an inter-State shipment without the surrender of the bill of lading it does so at its peril. It will be noted that the act does not exclude the consignor from its provisions but provides protection to any lawful holder against loss or damage caused by the carrier. (*Adams Express Co.* v. *Croninger, supra.*) The effect of the Carmack amendment was to give the lawful holder of the bill of lading a property right in the shipment covered by it, so far as claim for damages, loss or injury is involved. Thus it will be seen that the stipulation in question is not one for the benefit of the carrier, only, and this contention must fail.

Plaintiff in error's third contention is that there is no evidence of notice of claim, as stipulated in the bill of lading. This stipulation is as follows: "Claim for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property or within four months after a reasonable time for delivery has elapsed." Defendant in error Babbitt testified that about September 1 he made a claim for loss of freight in the usual way to a Mr. Arnold, of Montreal, Canada; that Arnold was the freight claim agent of plaintiff in error; that this claim was made by letter, stating the circumstances of the loss of the car of beans and enclosing an invoice of the property. Babbitt also testified that during the month of August following

the shipment various letters were written by the defendants in error to the delivering line, the Chicago and Eastern Illinois Railroad Company, asking for tracer on the car of beans, and that on September 26 of that year they filed a claim with its claim department at Chicago. This testimony was not objected to nor was it in any way denied.

Plaintiff in error contends that the words, "must be made in writing to the carrier at the point of delivery or at the point of origin," are descriptive of the place where the notice of claim must be filed and not descriptive of the carrier with whom such notice is to be filed, and that in order to give defendants in error the right to claim damages, notice of claim must have been filed either with the agent of the delivering carrier at Evansville, Indiana, or with the agent of the plaintiff in error at Millett, Michigan, the point of origin. The object of such a stipulation in a bill of lading is to secure to the carrier reasonable notice of loss or damage to shipments and should be given a practical construction. In *Georgia, Florida and Alabama Railway Co. v. Blish Milling Co.* 241 U. S. 190, the court, in construing a like stipulation, said: "Granting the stipulation is valid and binding, it does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way." It is a matter of common knowledge that railroads maintain what are known as claim departments, the duty of which is to investigate claims against such carriers. The purpose and effect of the notices filed in this case was to apprise plaintiff in error of the loss, and to give to it through its claim department, or that of the delivering carrier, who is for this purpose the agent of the initial carrier, (*Northern Pacific Railway Co. v. Wall,* 241 U. S. 87,) notice of defendants in error's claim.

This case is to be distinguished from those cases where bills of lading issued to cover shipments of perishable goods or live stock provide that notice of claim shall be given at

the point of delivery within a specified short time.   In such cases notice is required to be given to the agent of the delivering carrier at the point of delivery within the specified short time in order that the carrier might have opportunity to examine such shipment and to determine the nature and extent of the injury thereto before such shipment is removed or destroyed.   (*St. Louis, Iron Mountain and Southern Railway Co.* v. *Starbird, supra.*)   So in the shipment of live stock, where the bill of lading required the giving of notice in writing to an agent or officer of the initial carrier before the removal of such live stock from the place of delivery, it has been held that such notice must be given at the point of delivery to the agent of the delivering carrier, who, as we have seen, is the agent of the initial carrier, in order that inspection might be had by such carrier before the live stock was removed or became mingled with other live stock.   (*Northern Pacific Railway Co.* v. *Wall, supra.*)   In the case at bar defendants in error had four months from the date of delivery if delivered, or from the lapse of reasonable time therefor if not delivered, in which to file notice of claim.   It cannot be said that such a stipulation for notice of claim was for the purpose of inspecting the beans before their removal from the car.   Clearly, no benefit could accrue to the carrier by filing notice of claim at the point of delivery or of origin within four months after delivery that would not accrue to it by notice to it through its claim agent.   On the contrary, notice of claim to the claim department direct has a benefit to the carrier over that given to the agent at the point of delivery or origin, in that it goes directly to the department having in charge the settlement of the matter.   Without notice given to them, the managing officers and those responsible for the settlement and contest of claims would, by reason of the multitudinous transactions of a railroad company, be without actual knowledge of a particular claim. It would appear, therefore, that the purpose of the stipula-

tion in question is best served by filing notice of claim with the claim agent of the initial or delivering carrier, and that a reasonable and practical construction of the words, "must be made in writing to the carrier at the point of delivery or at the point of origin," would be that they are descriptive of the carrier to whom notice is to be given rather than of the place at which such notice is to be filed.

Plaintiff in error contends that the evidence does not show that notice of claim was filed within the time stipulated. The record shows the notice of claim to have been filed with the plaintiff in error about September 1. While the year was not stated, it is evident from all the testimony in the record that the September 1 referred to was that next after the shipment in question. We think, on examination of the record, that the trial court was justified in finding this notice to have been filed within the stipulated time. In addition to that, it may be said that the record shows a misdelivery of the beans, in that they were delivered without the surrender of the bill of lading, which, as we have seen, was required. The liability of a carrier in case of a misdelivery is as in the case of a failure to deliver. It was said in *Georgia, Florida and Alabama Railway Co.* v. *Blish Milling Co. supra:* "It is not to be doubted that if, in the case of an inter-State shipment under a through bill of lading, the terminal carrier makes a misdelivery the initial carrier is liable, and when it inserts in its bill of lading a provision requiring reasonable notice of claim 'in case of failure to make delivery,' the fair meaning of the stipulation is that it includes all cases of such failure, as well those due to misdelivery as those due to loss of goods." Since in the case at bar the plaintiff in error failed to deliver the beans in question, it follows that defendants in error had four months from the lapse of a reasonable time for making delivery in which to file notice of claim. It cannot be said that September 1,—or even September 26, the date of filing notice of claim with the delivering carrier,—occurred

more than four months "after a reasonable time for delivery" had elapsed.

The trial court did not err in refusing the motion of plaintiff in error to find for it, and the judgment of the Appellate Court must be affirmed. *Judgment affirmed.*