## National Surety Company, Appellant, v. Halsted Street State Bank, Appellee.

### Gen. No. 31,344.

1. BANKING—*effect of negotiability of forged paper on bank's liability in collecting.* The negotiability or non-negotiability of drafts made out to policyholders of an insurance company is immaterial on the question of the liability of a bank which obtains payment from the company on the drafts through indorsements forged by a company agent.

2. NEGOTIABLE INSTRUMENTS—*effect of forgery of payee's name.* Forgery of the indorsement of the payee's name on a draft, the payee being a real person, does not constitute the draft payable to a fictitious person and subject to the provision of Cahill's St. ch. 98, ¶ 29, that instruments payable to fictitious persons are payable to bearer.

3. BANKING—*authority of bank under forged indorsement.* A forged indorsement by an insurance company agent of the name of the payee of a draft made to a policyholder gives the indorsee bank no authority as agent to pass title or for any other purpose.

4. BANKING—*liability for payment of draft on forged indorsement.* A bank which collects drafts made out to insurance company policyholders and pays the proceeds to a company agent who forged the indorsements, without any proof of his authority, is liable for the full amount to the assignor of the company from whom it collected.

5. NEGOTIABLE INSTRUMENTS—*necessity of proving authority to indorse.* An insurance company may hold a bank liable for money paid through it to a company agent on his forged indorsements of drafts made to company policyholders, upon failure of the bank to show the company ever held out the agent as having authority to make such indorsements.

6. ASSIGNMENTS—*when officer may assign corporate right of action.* The assignment by a company of all its rights in ''checks'' with right to sue thereon, along with an assignment of a check and drafts, on

which the assignor had paid out money because of forged indorsements thereon, covers a right to sue to recover on said drafts and check even though the assignment was only signed by the assistant secretary of the company.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and judgment here. Opinion filed October 19, 1927.

GEORGE M. WEICHELT and DENT, DOBYNS & FREEMAN, for appellant.

GUSTAV E. BEERLY, for appellee; DWIGHT A. POMEROY, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On November 20, 1925, the plaintiff, National Surety Company, brought suit against the defendant, Halsted Street State Bank, in the municipal court of Chicago for $1,065.35. There was a trial before the court, without a jury, and on July 23, 1926, judgment entered that the plaintiff take nothing by its suit. This appeal is from that judgment.

It is the theory of the plaintiff, the National Surety Company, that the defendant, the Halsted Street State Bank, having paid a number of drafts and one check —all of which were drawn by the Employers Indemnity Corporation—upon the forged indorsements of the payees' names, and the plaintiff being the assignee and attorney in fact of the Employers Indemnity Corporation, the Halsted Street State Bank, defendant, is liable for the full amount of the drafts and check.

In the fall of 1924 and the spring of 1925, one Hawkins was employed by the Employers Indemnity Corporation, a casualty insurance company, which had offices in Chicago. He had charge of the business of the company in three States. No one in that territory

had authority over him. He had the title of Field Manager, and received instructions only from the Home Office in Kansas City, Missouri. Solicitation of business, keeping track of the policies when issued, collecting accounts, and the settlement of claims were in his charge.

Some time in the summer of 1924, Hawkins employed one Begbie to solicit health and accident insurance in his, Hawkins', territory. Begbie did not office with Hawkins, but did his clerical work at home. The blank forms that were used were all furnished by the Home Office.

When a loss occurred, it was the custom to allow men like Begbie to see that proof of loss was completed and brought to Hawkins, together with the physician's statement verifying the proof itself, and showing who the particular claimant was. Hawkins would check up that information and see that it tallied with the terms of the disability claimed, and whether the matter came within the terms of the policy. If it did, Hawkins would then issue a draft to the agent, such as Begbie, and allow the agent to deliver the draft to, and make a settlement with the claimant. That method was followed in order to create good feeling between the solicitor, such as Begbie, and his customers. The company relied upon Begbie, and men like him, to take the checks or drafts out to the policyholders. The forms were furnished to the agents, like Begbie, and when he, or the company, got notice from a policyholder of an injury, he, Hawkins, or the company, would give him, the solicitor, blanks and have him go out and see the customer, get proof of loss and a physician's statement, and have the papers completed and mailed back to Hawkins. After Hawkins had issued a draft, notice was given, and proof of loss and claim were sent to the Home Office of the Employers Indemnity Corporation; then that company would issue a check to cover the draft that was outstanding.

Between October 22, 1924, and January 10, 1925, eight different claims for losses were presented by Begbie to Hawkins, and in each instance Hawkins—being satisfied that the claim was valid and made on the part of a policyholder of the company—made out and signed a claim draft of the Employers Indemnity Corporation, payable to each of the insured by name. The particular claim drafts issued by Hawkins as special representative of the Employers Indemnity Corporation were as follows:

| | |
|---|---:|
| October 22, 1924 to Arthur H. Sparrey.. | $ 40.00 |
| October 28, 1924 to Anthony Mrskos.... | 50.00 |
| November 14, 1924 to George Diette..... | 60.00 |
| November 19, 1924 to John Prooily...... | 49.28 |
| November 28, 1924 to John Baturvich.... | 140.00 |
| December 31, 1924 to Lodowick E. S. Thomas .......................... | 54.00 |
| January 3, 1925 to Fredrick H. Gauger.. | 185.65 |
| January 9, 1925 to Leonard S. Haynes.. | 213.56 |
| January 10, 1925 Check to the order of Otto J. Norgard in the sum of........ | 192.86 |

In form, the claim drafts were practically all alike, save as to amount. The one dated October 22, 1924, to Sparrey for $40, which is here given as a sample, was as follows:

"Claim Draft
Employers Indemnity Corporation
Chicago, Illinois, Oct. 22, 1924   No. 5104
When receipt on reverse side is
properly signed by insured
Pay to the
Order of ARTHUR M. SPARREY          $40.00
FORTY DOLLARS
Payable through
Fidelity Nat'l Bk. and Tr. Co. Val H. Hawkins
Kansas City, Mo.          Special Representative.''

96     APPELLATE COURTS OF ILLINOIS.

National Surety Co. v. Halsted Street State Bank, 246 Ill. App. 92.

On the foregoing there was a receipt as follows: "Received of the Employers Indemnity Corporation * * * the sum of * * * in full compromise, satisfaction, release and discharge of all claims, I myself * * * now have or may hereafter have against said Employers Indemnity Corporation under its policy * * * (issued to me) for or on account of disabilities sustained by me, beginning on or about October 7, 1924, and for any * * * loss or disabilities * * * sustained or received by me up to this date."

All the drafts above mentioned—and the check dated January 10, 1925, which latter was signed by one Woodhead, an authorized officer of the Employers Indemnity Corporation, payable to the order of Otto J. Norgard for $192.86—were delivered by Hawkins to Begbie, to be delivered to the claimants in payment of their claims, which had been submitted to him, Hawkins.

Begbie presented each of the above-mentioned drafts and the check to the defendant, Halsted Street State Bank. In each case Begbie received a receipt for the draft from the bank, and the bank sent the draft on for collection, and after the bank collected the full amount of each draft, and upon presentation of the appropriate receipt, Begbie was paid in cash, and the receipt taken up.

After the defendant had paid the drafts and the check to Begbie, it was discovered that all the signatures of the various payees, all of whom were policyholders, had been forged by Begbie.

On October 29, 1925, the Employers Indemnity Corporation, by one McGinnis, assistant secretary, made a written assignment, which recites that in consideration of the payment of $812.86, by the National Surety Company, under a certain forgery bond, to the Employers Indemnity Corporation, it does sell and assign

to the National Surety Company, "the following checks" (reciting them), "The name of the payee having been forged thereon and said checks having been delivered to the National Surety Company for the purpose herein mentioned." The assignment also contained the following: "We do hereby appoint said National Surety Company our Attorney-in-fact irrevocable in the premises to proceed in its own name, in its own way, at its own expense and without recourse to us, to recover by suit or otherwise upon said check any and all right, claim, title or interest therein," etc.

The substantial question in the case is, whether the defendant, the Halsted Street State Bank, having received the amount of the drafts and the check from the Employers Indemnity Corporation, on Begbie's forged indorsement of the names of the payees, all of whom were policyholders, assumed the risk of the authority of Begbie, the indorser, not only to indorse the drafts and check, but to appropriate unto himself the proceeds.

It is contended for the defendant that the drafts were not negotiable. According to the law, in our judgment, it does not make any difference here whether the instruments were negotiable or non-negotiable. The plaintiff has sued on a statement of claim which recites that the defendant procured the money from the Employers Indemnity Corporation by means of forged indorsements, as was the case, as stated by Mr. Justice Cartwright in *Gustin-Bacon Mfg. Co. v. First Nat. Bank of Englewood*, 306 Ill. 179. See also *National Union Fire Ins. Co. v. Mellon Nat. Bank*, 276 Pa. 312.

It is contended that the instruments were payable to fictitious persons, and, therefore, should be considered, under the Negotiable Instruments Act, as payable to bearer. Section 9, Cahill's St. ch. 98, ¶ 29, of the act provides that,

"The instrument is payable to bearer  *  *  * person known by the drawer or maker to be fictitious or non-existent or of a living person not intended to have any interest in it." In the instant case, the instruments were not drawn to the order of fictitious or non-existing persons; on the other hand, they were drawn to the order of real persons from whom the drawer of the drafts, or the company, had negotiated insurance, and were drawn to pay the losses suffered by the insured payees. Further, as said in *National Union Fire Ins. Co. v. Mellon Nat. Bank, supra:*

"In addition to this, the fictitious or nonexisting persons must have been known to the drawer of the drafts to be such, before the result contended for could operate on the instruments, but the drawer knew no such thing, but just the opposite, that each of the payees was a real, existing person named as the insured in a policy of insurance issued by the drawer of the draft."

It is contended for the defendant that Begbie, as and incident to his business of soliciting insurance, had authority to make indorsements. It must be borne in mind, however, that Begbie did not forge the name of the drawer, his employer, but those of the payees, and that as the indorsements were forgeries of the names of the payees, they were made without any authority whatever from the payees, who were insured and beneficiaries under the policies. There is no evidence whatever that Begbie had any authority to indorse the payees' signatures. Such being the case, the forged signatures were without any legal effect, and in no way operated to constitute the bank an agent, either to pass title, or for any other purpose. In our judgment, the bank's liability is based upon the fact that under the law it dealt with Begbie at its peril, and was in duty bound to find out, not only the extent of his agency, but the extent of his authority.

And having accepted and collected the drafts and given the proceeds to Begbie without any evidence whatever of his authority, and the signatures being forged, it is liable for the full amount of the money paid out by the assignor of the plaintiff. *Gustin-Bacon Mfg. Co. v. First Nat. Bank of Englewood, supra.*

In our judgment section 23 of the Negotiable Instruments Law, Cahill's St. ch. 98, ¶ 43, applies, and the evidence on behalf of the defendant does not show that the Insurance Company was precluded from setting up the forgery for want of authority. There was no evidence in the record even tending to show that the Employers Indemnity Corporation even held out Begbie in any way to the defendant, the Halsted Street State Bank, as having any authority to make the indorsements in question. There is no evidence that the Employers Indemnity Corporation had any account with the defendant bank, or ever had any business dealings or communication with it, or that the Employers Indemnity Corporation ever knew of the existence of the defendant until it made a demand upon the defendant for the return of the money collected under fraudulent indorsements. *Bartlett v. First Nat. Bank of Chicago,* 247 Ill. 490; *Crahe v. Mercantile Trust & Savings Bank,* 295 Ill. 375; *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 311 Ill. 278; *Kepligalla v. National Bank of India* (1909), 2 K. B. 1010.

Some contention is made on the part of the defendant that the instrument purporting to be an assignment by the Employers Indemnity Corporation, to the plaintiff, the National Surety Company, was not valid. An examination of the instrument in question shows that the Employers Indemnity Corporation sold and assigned to the National Surety Company the instruments in question and for the purposes therein mentioned; and, further, that under the assignment, the National Surety Company was appointed attorney

in fact "to proceed in its own name, in its own way, at its own expense, and without recourse to us, to recover by suit, or otherwise, upon said checks, any and all right, claim, title or interest therein." In our judgment, the assignment was ample, and, even though signed by the assistant secretary, was sufficient and binding.

The judgment, therefore, will be reversed and judgment entered here, in favor of the plaintiff, in the sum of $903.80, being the principal sum of $851.79, together with interest at the rate of five per cent per annum, from July 23, 1926, to date.

*Reversed and judgment here.*

HOLDOM and WILSON, JJ., concur.