Parisian Novelty Company, Appellant, v. Advertisers Manufacturing Company, Appellee.

## Gen. No. 32,321.

Opinion filed March 26, 1928.
Rehearing denied April 9, 1928,

FISCHEL, KAHN, HEART & EPSTEIN, for appellant.

HEINEMAN, RONAN & LANGSETT, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff is a resident corporation, a manufacturer, jobber and seller of advertising specialties and novelties. Defendant is a Wisconsin corporation manufacturing cloth advertising novelties at Ripon, Wisconsin.

On July 31, 1925, plaintiff with defendant's assistance sold to the Eagle Picher Lead Company 500,000 caps at $44.95 per thousand. For this service defendant paid plaintiff a commission of $1.75 per thousand. The order was confirmed August 4, 1925, at which time defendant wrote plaintiff, inclosing in the letter a circular described as "Commission Payment Policy and Special Information for Salesmen." Item No. 2 of this circular states:

"Full commission will be paid on re-orders coming direct from the customer, as long as the salesman continues actively selling our line."

On July 24, 1926, the Eagle Picher Lead Company gave another order to defendant for 400,000 caps at a price of $37 per thousand, and plaintiff in this suit claims that it is entitled to a commission on this sale on the theory that it was a re-order and also on the theory that it assisted in getting the business.

The cause was tried by the court without a jury, and at the close of all the evidence the court made a finding for defendant and entered judgment thereon. It is claimed the finding and judgment are against the evidence. There is little, if any, conflict in the evidence upon material facts.

On December 31, 1925, the defendant wrote plaintiff,

in reply to a claim of plaintiff for commission on an order from the Johnson Wax Company, the following:

"We wish to advise that it will be impossible for us to allow you a commission on this order as it never occurred to us at the time to allow any salesman's commission.

"In order to get this business it was necessary to quote a very close price, which we did. We will bear this matter in mind, however, and on any future business received through the Eagle-Picher Lead Co. we will see that there is a substantial allowance for you."

On January 4, 1926, defendant wrote plaintiff:

"We certainly regret that our decision in the matter of the cap order received from the Johnson Wax Company of Racine is not satisfactory to you.

"If you had expected to obtain a commission on this business and if the Eagle-Picher Lead Co. intended that you should, it would seem as if they would have referred the inquiry to you instead of sending it direct to us.

"We understand the way you feel in this matter and hereafter we will see that you are given full benefit of all orders which are developed through the Eagle-Picher Lead Co."

On January 15, 1926, defendant wrote plaintiff asking as to the possibility of placing an order of the Cudahy Packing Company and asking if there was any possible way defendant could help. In this letter defendant further stated:

"We certainly are pleased to note that Mr. Stanton is pleased with the services which we have rendered and can assure you we have done everything we possibly could to maintain this account for both of us for years to come."

Mr. Stanton was a representative of the Eagle Picher Lead Company.

On April 29, 1926, plaintiff wrote defendant, stating

facts with reference to several orders which it hoped to obtain from proposed customers:

"I was up to Eagle Picher the other day and Mr. Goudy, who is quite a nice fellow, was 'kidding.' At the close of his conversation he stated that you had never come up to see him. The next time you are in Chicago I would suggest that you call on Mr. Goudy, take him out to lunch and 'pay him a little attention' as he appreciates it. Heretofore most of my efforts have been directed towards Mr. Stanton, from whom I get my orders. However, Goudy felt a little hurt; so I asked him out to lunch the other day. Now everything is O. K. with Eagle Picher and I feel absolutely sure that a repeat order will be coming forth sometime in July."

On May 1, 1926, defendant wrote plaintiff:

"We note that the Eagle Picher Lead Company is feeling very neglected and I regret that I have been unable to get into Chicago to see Mr. Goudy or Mr. Stanton. However, I will do so very shortly. We appreciate the fact that it is these little personal touches that pulls and cements business of this kind."

July 19, 1926, plaintiff wrote the defendant stating that the writer had been to see Mr. Goudy of the Eagle Picher firm, and after relating a number of other matters, said:

"Goudy further stated that he would be ready to place their order for next year about the first of August, so would advise you be in the city about that time in order to facilitate matters."

July 30, 1926, defendant wrote:

"We very much regret that we will not be able to allow you any commission on the 1927 contract which we have just placed. The writer was in Chicago last week and placed their order for $37.00 per thousand. They bought a much cheaper cap than last year but at the same time it is absolutely air-tight. * * *

"There is not any profit in this figure for us as you

can readily understand from the price, and in fact it will barely cover overhead expense. When you consider the fact that the order has to be made up a considerable time in advance of the day of shipment and carried for many months, you will understand that the order represents a heavy loss when carrying charges are taken into consideration. We certainly regret this situation very much but under the circumstances there is nothing that can be done. The Kemper-Thomas Company are simply out to show us a thing or two and we are meeting them with very heavy competition on every large contract which is placed."

August 10, 1926, defendant wrote plaintiff:

"Your letter of August 9th is at hand and we wish to advise that our letter of July 30th covers the Eagle-Picher Lead situation entirely and that we have nothing more to offer.

"This business was placed by the writer direct and at a very close figure. We are not able to allow you any commission on this transaction much as we would like to. You certainly should realize that at a price of $37.00 per thousand there is absolutely no room for a salesman's profit."

Mr. Kahn testified for the plaintiff that he first met Mr. Bumby, the representative of the defendant, in the summer of 1925 at the time Bumby came to Chicago to help close the Eagle Picher order. He said that Mr. Stanton of the Eagle Picher Company at that time stated that he preferred that the order be handled direct instead of being jobbed through plaintiff, and the witness said to Mr. Stanton that that would be all right with Mr. Bumby, to which Mr. Bumby replied, "Yes." He further testified that Bumby did not to his knowledge know the Eagle Picher Lead Company prior to this time and that from the time the first order was taken up to the time of the lawsuit plaintiff tried to sell to Sears, Roebuck & Company and to the Western Electric Company, and to arrange with Bumby to come in

and close the order, and that he communicated from time to time with Bumby. He further said that between the time when he first met Mr. Bumby and the time the second Eagle Picher order was closed plaintiff attempted to sell a number of other orders but did not sell any; that after the second order was placed they secured two other orders.

Mr. Bumby for defendant testified that he came to Chicago in 1925 at the request of Mr. Kahn to aid him in placing the Eagle Picher order; that there was no conversation at that time as to re-orders; that as to the order of July 24, 1926, he received a telegram on July 19th asking him to go to Chicago and stating that the Eagle Picher Company was intending to place the order; that he took a sleeper to Chicago, got there the morning of July 20th and had a conversation with Mr. Stanton and Mr. Goudy of the Eagle Picher Company. He further testified that the two orders received through the plaintiff after the order of July 24, 1926, were for 1,000 and 250 caps respectively; that defendant was still sending literature to Mr. Kahn and sent him the price list. He says that by the statement, ''We will bear this matter in mind'' in one of the letters, ''I meant that we would keep the matter in mind on any business developing through the Eagle Picher Lead Co.; we would refer the inquiry to Mr. Kahn and would quote them on the business. We would not quote anything but the net price to the person making the inquiry.'' He said that on the first order he added the amount of Mr. Kahn's commission to the price of the goods but did not tell this to Mr. Stanton. He said that he came to Chicago on July 20th in response to a telegram from the Eagle Picher Lead Company; that he did not receive plaintiff's letter of July 19th until he got back to Milwaukee; that he went to Chicago and got back to his office before July 24th but told nothing to Mr. Kahn and didn't inform him until July

30th, when the witness sent a check to balance up the former transactions.

The plaintiff submitted findings of fact and propositions of law and moved that the court write upon each of these findings and propositions the word "held" or "refused." The court in each instance declined so to do, but as to the findings of fact the court marked the first finding "refused," "with the statement that said refusal was to stand as a blanket refusal to each and every one of the findings of fact following the same and bound in the same sheaf." Likewise, the first proposition of law was marked "refused" with a similar statement as to the other propositions of law tendered. The plaintiff urges that the court erred in refusing to write "refused" or "held" upon each of these findings and propositions as requested.

Section 61 of the Practice Act (see Cahill's St. ch. 110, ¶ 61; Smith-Hurd's Ill. Rev. St. 1927, p. 2078) provides:

"Upon a trial by the court either party may, within such time as the court may require, submit to the court written propositions to be held as law in the decision of the case, upon which the court shall write 'refused' or 'held,' as he shall be of opinion is the law, or modify the same, to which either party may except as to other opinions of the court. In any case so tried the court shall find specially upon any material question or questions of fact which shall be submitted in writing by either party before the commencement of the argument."

In *Levy v. Burkstrom,* 174 Ill. App. 276, and *Alexander County Savings Bank v. Murray,* 224 Ill. App. 559, this court held that it was mandatory upon the trial judge to indicate his disposition of the submitted propositions of law by writing thereon, following the rule as laid down in *Mann v. Learned,* 195 Ill. 502, and *Western Valve Co. v. Wells,* 127 Ill. App. 655. This ruling seems to be in harmony with the views of the

Supreme Court as expressed in *Bradish v. Yocum*, 130 Ill. 386, and *Babbitt v. Grand Trunk Western Ry. Co.*, 285 Ill. 267. In *Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago Ry. Co.*, 300 Ill. 162, the Supreme Court held that the Appellate Court might not decline to consider the merits of a suit at law tried without a jury merely because no propositions of law were submitted to the trial court, as the decision of the trial court to the sufficiency of the evidence was not final and binding on the Appellate Court in such case even though no question of law was raised in any manner, and that decision explained *Babbitt v. Grand Trunk Western Ry. Co., supra,* and *Bradish v. Yocum, supra,* as not necessarily applicable to practice in the Appellate Court.

In *Pressed Steel Equipment Co. v. Thornburgh Pressteel Co.*, 312 Ill. 359, the Supreme Court held that where there were no propositions of law submitted, no motion made to find for the plaintiff, and no question raised as to the admission and exclusion of evidence, a question of law was not presented in the Supreme Court after the Appellate Court had affirmed the judgment of the trial court, and overruled contrary expressions in *Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago Ry. Co., supra.* In *National Can Co. v. Weirton Steel Co.*, 314 Ill. 280, the court again adhered to the rule as last laid down, but stated that it did not mean that upon such a record in no event could the correctness of the judgment, when challenged by proper assignments of error, be reviewed; that where the record was insufficient to sustain the judgment, the Supreme Court was authorized to entertain assignments of error which would question the validity of the judgment on that ground, citing *American Exchange Nat. Bank v. Chicago Nat. Bank*, 131 Ill. 547.

In *Madison & Kedzie State Bank v. Garfield Park Storage Co.*, 324 Ill. 222, the court again quotes with approval *National Can Co. v. Weirton Steel Co., supra;*

*Pressed Steel Equipment Co. v. Thornburgh Pressteel Co., supra; American Exchange Nat. Bank v. Chicago Nat. Bank, supra; Bolton v. Johnston,* 163 Ill. 234; *Mutual Protective League v. McKee,* 223 Ill. 364; and *Babbitt v. Grand Trunk Western Ry. Co., supra.*

We think, therefore, that it cannot be said that the ruling of the court upon findings of fact and propositions of law under section 61, Cahill's St. ch. 110, ¶ 61, is a matter of indifference, but that the provision of the statute is mandatory; that the trial court should not have refused to mark the propositions of law either as "held" or "refused." Failure to comply with the statute in this regard may be reversible error. There is a clear distinction between cases in which a court refuses to comply with section 61, Cahill's St. ch. 110, ¶ 61, of the statute and cases such as *Marks v. Knofsky Co.,* 233 Ill. App. 293; *Foreman Bros. Banking Co. v. Dudeck,* 233 Ill. App. 364; *Folsom v. Northern Trust Co.,* 237 Ill. App. 419; *People v. Oberby,* 240 Ill. App. 112; *Bright v. Riedy,* 243 Ill. App. 314; *Bitzer v. Southern Surety Co.,* 245 Ill. App. 295, in which questions as to the rules applicable in Appellate Courts where no propositions of law had been submitted were considered.

However, irrespective of these findings, we think that under the undisputed facts the court erred, for, whether upon the theory that the order of July 24, 1926, was a re-order within the meaning of defendant's circular, or upon the theory that the plaintiff actively participated in securing the order with the acquiescence and consent of the defendant, we think the defendant is liable, and that such is the necessary inference from the whole transaction as shown by the correspondence and the testimony. The finding against the plaintiff and in favor of the defendant is against the manifest preponderance of the evidence, and the judgment is therefore reversed with a finding of facts and judgment here in favor of the plaintiff for $700.

*Reversed with finding of facts and judgment here.*
O'Connor and McSurely, JJ., concur.

Finding of facts: We find as facts that on July 24, 1926, the defendant sold to the Eagle Picher Lead Company 400,000 caps at the price of $37 per thousand; that plaintiff, with the acquiescence and consent of the defendant, assisted in the making of said sale; that under an agreement between the plaintiff and defendant, plaintiff is entitled to a commission of $1.75 per thousand upon said caps so sold, and that there is due from the defendant to the plaintiff on account of said commission the sum of $700.