Parish State Bank, Appellant, v. M. G. Tremore, Appellee.

Gen. No. 7,973.

**186**

Opinion filed February 4, 1929. Rehearing denied June 18, 1929.

V. A. PARISH, for appellant.

E. P. HARNEY, for appellee.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

Parish State Bank, a banking corporation, appellant, brought suit against appellee, M. G. Tremore, to recover the amount paid by the bank to him on a check bearing a forged indorsement. A jury trial was waived and the cause was tried by the court. This appeal is from a judgment for appellee.

The facts were stipulated, and disclose that about six months prior to the date of the check, Tremore met an insurance solicitor by the name of W. R. Smith. Tremore was an employee of the Chicago & Eastern Illinois Railroad Company, and, as a side line, ran a bus through and around Momence. He drove Smith about considerably, and Smith gave him a check for $15 on a Chicago bank, which was cashed at a local bank and went through the Chicago clearing house.

Some time afterwards, Smith again came to Momence and requested Tremore to drive him from Momence to Kankakee. With Smith was another man who was introduced to Tremore as Smith's partner. Tremore drove them to the grocery store of Arthur English in Kankakee. Smith went into the store and

after remaining an hour and a half or two hours, came back to the automobile for the return trip to Momence. While driving through Kankakee, Smith said he wanted to get a check certified and requested Tremore to stop in front of the Legris Trust & Savings Bank. Smith went into the bank and when he came out they drove to Momence, stopping in front of the Central Hotel which is about opposite Parish State Bank. Smith said to Tremore, "I haven't money enough to pay you for this trip but I have a certified check here and I want to go into the hotel, and I wish you would take it across to the bank and have it cashed." Tremore went to the Parish State Bank and presented the check. The bank cashed it, paying him $150, which was the amount of the check. Tremore returned to the automobile and paid Smith the $150, less his taxi bill of $7. The record discloses that when the check was presented to the bank, Tremore did not indorse it and there was nothing said between him and the cashier at the bank. It was stipulated that at the time the check was presented, Tremore did not know there were any indorsements on the back of the check; that he paid no attention to it whatever, and had no connection with Smith and had no knowledge of the procuring of the check or getting it indorsed, except as to what had already been said. He was a patron and depositor of the bank when the check was cashed.

The check in question was drawn by Arthur English, whose signature thereon was genuine. It was drawn on the Legris Trust & Savings Bank and was payable to the order of the Foulds Company, but it was never delivered to the payee and never came into its possession. It was indorsed in blank by what purported to be the signature of the Foulds Company, but that indorsement and all others on the check, except the bank indorsement, were forgeries. It was certified by the Legris Bank without the knowledge or consent of the payee or of appellee.

After appellant bank cashed the check, it indorsed it and sent it through the usual channels for collection. In due time it reached the Legris Trust & Savings Bank, was paid by it, and charged to English's account. It was later found that the indorsement of the Foulds Company was a forgery. The Legris Bank then reimbursed English and obtained a judgment before a justice of the peace against appellant bank for the amount of the check, which was paid without appeal. Thereupon this suit was instituted. No propositions of law were submitted, and the court having tried the cause without a jury, upon a stipulation of facts, the only question to be determined by this court is whether or not the facts stipulated sustain the judgment of the trial court. (*Bione v. Bell*, 221 Ill. App. 434; *Babbitt v. Grand Trunk Western Ry. Co.*, 285 Ill. 267.) Appellant contends that the check was payable to bearer because, although payable to order, it was indorsed in blank; that Tremore negotiated it by delivery and warranted it to be genuine in all respects and that he had good title to it.

Section 9 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 29, provides that an instrument is payable to bearer, when, although originally payable to order, it is indorsed in blank by the payee or a subsequent indorsee. The check in question was not indorsed by the payee. The purported indorsement was a forgery, neither was it indorsed in blank by any subsequent indorsee. In *National Surety Co. v. Halsted Street State Bank*, 246 Ill. App. 92, it is held that forgery of the indorsement of a payee's name on a draft, the payee being a real person, does not constitute the draft payable to a fictitious person and subject to the provisions of section 9 of the act. By analogy, the check in the case at bar did not come within the terms of the statute and was not payable to bearer.

Appellant also claims that Tremore negotiated the check by delivery, and cites section 30 of the Negoti-

able Instruments Act, Cahill's St. ch. 98, ¶ 50, in support of that contention. That section provides: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer, . . . it is negotiated by the indorsement of the holder, completed by delivery." The check was not payable to bearer and was not indorsed by the holder. The holder is the person or indorsee who is in possession of it or the bearer thereof. (Cahill's St. ch. 98, ¶ 213.) Therefore, Tremore did not negotiate the check by delivery.

It is claimed that Tremore is liable under the provisions of section 65 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 85, which provides that every person negotiating an instrument by delivery or qualified indorsement warrants: (1) That the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of the instrument. Inasmuch as Tremore did not negotiate the check by delivery or qualified indorsement as contemplated in the statute, the warranties mentioned are not applicable to the facts in the case at bar.

The fact that Tremore was the agent of Smith in cashing the check and did not disclose the name of his principal did not render him liable under section 69 of the Act, Cahill's St. ch. 98, ¶ 89, which provides that when a broker or other agent negotiates an instrument without indorsement, he incurs all the liabilities prescribed by said section 65, Cahill's St. ch. 98, ¶ 85, unless he discloses the name of the principal and the fact that he is acting only as agent. It appears from the stipulation that Tremore really had nothing to do with the transaction other than to carry the check from Smith to the bank for payment and return the

money. The part he performed was merely that of a messenger. He did not pretend to represent Smith, or to exercise any authority or discretion in the matter, but simply performed an errand at Smith's request. He was not Smith's agent in the sense the statute contemplates. (*Doyle v. Teas*, 4 Scam. (Ill.) 202; 40 C. J., Messenger, 653, note 99, quoting *Pfister v. Central Pac. R. Co.*, 70 Cal. 169; *Booker v. Booker*, 208 Ill. 529.) Under the definition of the word "negotiate" as laid down in section 30 of the act, Cahill's St. ch. 98, ¶ 50, Tremore did not negotiate the check. The stipulated facts fully warranted the judgment.

*Judgment affirmed.*